[No. 8949.   Department Two.   January 7, 1911.]

## J. W. COFFER, *Respondent*, v. C. J. ERICKSON, *Appellant*.[1]

MUNICIPAL CORPORATIONS—STREETS—NEGLIGENCE—INJURY TO PE-
DESTRIANS—CONTRIBUTORY NEGLIGENCE. It is not contributory neg-
ligence, at a matter of law, for plaintiff to walk across a narrow
foot bridge especially built for foot passengers, under which was a
work train the locomotive of which was throwing up sparks and
cinders, one of which lodged in plaintiff's eye (MORRIS and CHAD-
WICK, JJ., dissenting).

MUNICIPAL CORPORATIONS—STREETS—NEGLIGENCE OF CONTRACTOR—
INJURY TO PEDESTRIAN. It is negligence, warranting a recovery for
the loss of an eye by a pedestrian by reason of a cinder, for a
contractor on a city street to operate a locomotive without sufficient
spark arresters, under a narrow bridge designed for foot passengers.

APPEAL—REVIEW—HARMLESS ERROR—EVIDENCE—RELEVANCY. In
an action for the loss of an eye through the lodgment of a cinder,
it is not prejudicial error to exclude evidence of experts as to the
frequency of a loathsome disease, the effect of which might have
been a disease of the eye, resulting in its loss, where it was shown
that the eye was treated for such disease and the expert was allowed
to go into the history of the germ and explain the manner of its
detection, as his testimony was not restricted.

APPEAL—HARMLESS ERROR—NEGLIGENCE—CONTRIBUTORY NEGLI-
GENCE—INSTRUCTIONS. An instruction upon the subject of contribu-
tory negligence is not prejudicial error in stating that the plaintiff
must not "blindly and heedlessly rush into a place of danger,"
when, as coupled with other correct instructions, the jury could not
have been misled.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE—DISCRE-
TION. It is not an abuse of discretion to refuse a new trial for newly
discovered evidence, where it appears that such evidence was dis-
closed early in the trial, no continuance was asked, or effort made
to learn of the whereabouts of the witness, and from the circum-
stances the trial judge was warranted in finding that due diligence
had not been exercised in the first instance.

Appeal from a judgment of the superior court for King
county, Ronald J., entered February 7, 1910, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
for damages sustained through the loss of an eye.   Affirmed.

[1]Reported in 112 Pac. 643.

*Peters & Powell,* for appellant.

*H. E. Foster,* for respondent.

Dunbar, J.—The appellant, Erickson, was under a contract with the city of Seattle for the regrade of Fourth avenue from Yesler Way north to Pike street. Fourth avenue runs northerly and southerly, and is crossed by Columbia street, running easterly and westerly. At the intersection of Columbia street and Fourth avenue, Fourth avenue had been cut down about thirteen feet, and in order to permit the going and coming of foot passengers upon Columbia street across Fourth avenue, the city had authorized the appellant to construct a wooden bridge, extending along the north side of Columbia street from the east side of Fourth avenue to the west side, spanning the entire Fourth avenue. The bridge was sixty-eight feet long, the main part of it six feet wide, with extending floors three feet on each side, making the entire width of the bridge, so far as protection from anything below was concerned, about twelve feet. The appellant, at the time of this accident, which was in September, 1908, had laid down two tracks upon which he operated trains of dump cars drawn by small locomotive engines, to carry the dirt from the northern portion of the work southerly, and the east trains passed to and fro under this foot bridge. The respondent was a timber cruiser and had lived in that neighborhood for about a year. On the first of September, 1908, while walking down Columbia street he stepped upon this bridge, and while going across it, one of the appellant's engines carrying some empty dirt cars passed under the bridge and, according to respondent's complaint, puffed up or threw up on top of the bridge a cloud of cinders, one of which was thrown into respondent's eye, with the effect that, after a long treatment, the eye was lost; and this action is brought for damages for said loss.

The material allegation in the complaint, upon which the issues were tried, was, in substance, as follows: That while

plaintiff was upon the overhead bridge and attempting to cross said Fourth avenue, the defendant, his agents and servants wrongfully and without right, had, standing upon said public street and near said overhead bridge, a work train propelled by a steam locomotive, which steam locomotive was not equipped so as to protect pedestrians and others from injuries by reason of its operation, the same not being equipped with what are known as spark arresters; and while plaintiff was upon said overhead bridge the defendant, his agents and servants, wrongfully and without right, suddenly and without notice or warning, started said work train forward, with great force and energy, and the same not then and there being equipped with appliances to prevent it from throwing particles and cinders, a particle, cinder, or other substance was, on account of the careless and negligent manner in which the locomotive was kept and operated and started, and on account of the lack of proper equipment in the way of arresters, thrown with great force and power from said locomotive into plaintiff's right eye, thereby and instantly causing the plaintiff great pain and suffering, and which cinder or particle so thrown in his eye embedded itself therein, and the same became so serious that, before the particle could be removed, it so damaged and injured plaintiff's eye that said eye became totally destroyed.

It was admitted by the appellant that he did not have the ordinary or technical spark arresters on the engines which he operated, but it was claimed that they had other devices which were equally effective. The effectiveness of these devices was a question which, under conflicting testimony, was submitted to the jury; its verdict shows that it was decided in favor of respondent's contention, and that question we will not further discuss. At the close of the respondent's testimony, motion for a nonsuit was made; also motion for an instructed verdict, and upon the conclusion of the entire case, a demurrer to the evidence; the denial of all of which is alleged as error.

The main contention of the appellant is that the respondent had failed to show any negligence on the part of the appellant, and that he had shown by his own testimony contributory negligence. It is urged that it was contributory negligence for a man forty years of age, a timber cruiser, who had lived for six years in the city of Seattle and for one year prior to the accident continuously within a block of where the accident occurred, and who had observed daily the manner of operating the trains, to step upon this bridge when he was cognizant of the fact that the engines were passing and were liable to pass under it. Several cases from this court are cited to sustain this contention, the first of which is *Woolf v. Washington R. & Nav. Co.*, 37 Wash. 491, 79 Pac. 997. In that case it was held that a traveler who drives a team upon a railroad crossing, at a point where for considerable distance he had an unobstructed view of an approaching locomotive, is guilty of contributory negligence as a matter of law, where he drives onto the crossing either without looking, or looks and whips up his horses in an endeavor to cross ahead of the engine. The other cases cited —*Criss v. Seattle Elec. Co.*, 38 Wash. 320, 80 Pac. 525; *Coats v. Seattle Elec. Co.*, 39 Wash. 386, 81 Pac. 830, and *Davis v. Coeur d'Alene & S. R. Co.*, 47 Wash. 301, 91 Pac. 839, are all of the same character, and based on the doctrine announced in *Woolf v. Washington R. & Nav. Co., supra.* But these cases can be readily distinguished from the case under consideration, for there it was a foregone conclusion that, if the parties injured drove or walked onto railroad tracks when cars were close to them, as shown by the testimony in those cases, there was no probability of their escaping instant death or serious damage. But in this case there is no such impending or apparent danger shown, for a person might walk over this foot bridge many times and escape serious consequences. The appellant, in his argument to show that he was not guilty of negligence, says:

"But even if there had been competent proof that there

were no spark arresters on the defendant's engines or that the injury to plaintiff's eye resulted from a defect in such, still the injury and extent of it was an occurrence so unusual in human experience as not to constitute negligence on the part of the defendant;"

citing cases to sustain this doctrine.

Again, it is said:

"When the act and injury are not known by common experience to be naturally and usually in sequence, and the injury does not, according to the ordinary course of events, follow from the act, then the act and the injury are not sufficiently connected to make the act the proximate cause of the injury."

If this is true, it must necessarily follow that the peril was not sufficiently apparent to constitute negligence on the part of the party who was walking across the bridge. It must be borne in mind that this was a bridge built for the special use of foot passengers, and that the respondent had a right to walk and cross this bridge in the absence of any apparent danger. So that the vital question in this case is, do the circumstances under which these engines were operated, taking into consideration their construction with reference to preventing sparks from flying, show negligence on the part of the appellant? The same test of negligence could not be applied to the passenger as would be applied to the operator of the engines, for it was his duty to look out for the safety of foot travelers, and to investigate and determine what character of cars and what manner of operation of said cars would inure to the safety of the traveling public. But, as we have said, we think there was sufficient on this question of negligence to be passed to the consideration of the jury.

There was an attempt on the part of the appellant to prove that the cause of the loss of the eye was not attributable to a cinder from appellant's engine, but was caused by what is technically termed gonorrheal ophthalmia, the effect of a loathsome disease, and he introduced Dr. R. W. Perry, who

was asked to describe this loathsome disease, and did so. He was then asked the question: "Do you frequently meet it in your experience in the practice of your profession?" This question was objected to as immaterial, the objection was sustained, and this is alleged as error by the appellant. The court said:

"That would be competent testimony for you if you can show any probability or likelihood, or if you are going to follow it up by showing that this man had gonorrhea, and that it could have come in contact with his eye in such manner as the doctor testifies infection could take place;"

but held, as we think properly, that it was immaterial under the circumstances proven.

Dr. Burns, who had treated the eye, had testified that he had treated it as gonorrhea ophthalmia, and Dr. Perry was then allowed, after this objection was sustained, to go into the history distinguishing germ of the disease, which he described as the diplo-coccus of nesla, over the objection of the respondent. He was then asked "if, upon a microscopic examination of a smear from the discharge, an oculist should discover the presence of this diplo-coccus, what would he be likely to assume as the cause of this pus discharge, as well as to surmise;" and answered that, "if he found the diplo-coccus of gonorrhea or nesla, he might say definitely that was the cause of the trouble in his eye—of the discharge;" and much more to the same effect. So that we think that the testimony of Dr. Burns, was not restricted, and that the mere fact that this disease might have been frequently found in his experience in the practice of his profession as an oculist was not material, for it was conceded that it was a disease pertaining to the eye.

It is also contended that the court erred in instructing the jury, in relation to the alleged contributory negligence of respondent, as follows:

"He must not blindly and heedlessly rush into a place where danger is likely to be apprehended. If plaintiff met

this requirement he cannot be charged with contributory negligence. If he fell short of this requirement, and if his negligence in this respect, contributed to and was a proximate cause of his injury, then he cannot recover."

Objection is made to the language "blindly and heedlessly rush into a place where danger is likely to be apprehended." This may not be the most fortunate expression that the court could have used, but no two judges express themselves exactly alike, and when the whole instruction in this respect is considered, we think that the jury were not in any way misled. On this branch of the subject the court said:

"Pedestrians had a right to cross said overhead bridge, but the law requires that a pedestrian in crossing a street which is being improved, or wherein work is being carried on, must act as a person of ordinary prudence, care and caution, with the knowledge and experience of such pedestrian, would act under similar circumstances. He must not blindly," etc.

It will not be presumed that the jury seized on two or three words in an instruction and lost sight of the sense of the instruction as a whole, where it was as plainly stated as it was in the instruction in this case. The instruction throughout, both as to the duties and liabilities of the appellant and the corresponding care demanded of the respondent, are full and fair, and we are satisfied that the jury were in no way misled by them.

It is also assigned that the court erred in not granting the appellant a new trial on the ground of newly discovered evidence. The application for new trial was based on the affidavit of John J. Jamison, a clerk in the office of the attorneys for the appellant, who swears that, as such clerk, he had sole charge of the investigation of the facts constituting a defense, and of the securing of witnesses and the preparation of the trial for the appellant; that effort had been made to obtain the names of the nurses at the hospital at the time of respondent's sojourn there, which had failed; that the nurse Anna Bonen had testified that, in irrigating

the eye of the respondent, a cinder, about a quarter of an inch long, had been washed therefrom into the receiving basin, and that this cinder had been discovered by, and examined by, Sister Crescent, who was the chief nurse; that the existence of Sister Crescent was not known to the appellant prior to the time of this testimony, and that immediate steps were taken to obtain the testimony of said Sister Crescent, who was found to be in Colfax, Washington; that an affidavit had been obtained from her which, in effect, disputed the testimony of Miss Bonen in relation to the cinder, and that on account of this newly discovered evidence, a new trial should be granted.  But this testimony was adduced early in the case.  Counsel had notice on the 2d of February, by the testimony of the nurse Miss Bonen, that Sister Crescent was present when the particle was washed from the eye into the basin, and that Sister Crescent picked up the particle and examined it, and afterwards lost it.  It also appears from the testimony of Dr. Burns, early in the case, that, while he was attending the respondent at the hospital, he was advised that this substance had been washed from the eye.

The granting of a new trial on the ground of newly discovered evidence is a question necessarily so largely in the discretion of the trial judge that it must appear with reasonable certainty that such discretion has been abused to the prejudice of the appellant, before the appellate court will substitute its judgment for that of the presiding judge, who has observed the proceeding throughout the trial.  In this case, the judge might reasonably have concluded that due diligence had not been exercised by appellant's attorneys.  The attending physician, Dr. Burns, indicated by his testimony that he was at least friendly to the defense. A consultation with him would, no doubt, have disclosed who the nurses were who attended on respondent while in the hospital, and it would seem, in a case of this kind, that due diligence would have required the ascertainment of that fact.

Nor did it seem to have been any secret, for it readily developed in the trial, by the testimony of the nurse Miss Bonen and Sister Arthur, that Sister Crescent was the chief nurse during respondent's stay at the hospital. These were circumstances which the court might reasonably take into consideration, in connection with the claim of the clerk that he had been unable to ascertain who the nurses were. In addition to this, the appellant was informed of this transaction and of the fact that Sister Crescent witnessed it, in the early stage of the trial, viz., on February 2, and the trial was extended over February 4; and notwithstanding the fact that the affidavit sets forth "that the town of Colfax is about three hundred and fifty miles or more from the city of Seattle, and that it was utterly impossible to obtain an interview with, or the attendance of, Sister Crescent at said trial," no motion was made for a continuance and no suggestion of surprise. After having knowledge of the facts complained of, the appellant offered his testimony and, at the close thereof, formally rested his case. He should not be permitted to submit his case on one set of facts and, if a verdict is found against him, obtain another trial on another set of facts which were known to him at the time of such submission. Such has been the uniform holding of this court where no continuance was asked for. *Pincus v. Puget Sound Brewing Co.*, 18 Wash. 108, 50 Pac. 930; *Woods v. Globe Nav. Co.*, 40 Wash. 376, 82 Pac. 401; *Reeder v. Traders' Nat. Bank of Spokane*, 28 Wash. 139, 68 Pac. 461.

Considering the whole case, we see no reason for disturbing the judgment. It is therefore affirmed.

Rudkin, C. J., and Crow, J., concur.

Morris, J. (dissenting)—I dissent. The evidence to my mind clearly establishes the contributory negligence of the respondent. He had lived within a block of the place where he claims to have received his injury, for a year, crossing the bridge daily. He knew the engines discharged quanti-

ties of smoke and cinders, while they were passing under the bridge. He noticed it frequently. He says the bridge "was literally covered there at times, I noticed," and that he never passed there without observing cinders being thrown out with great force. As he saw an engine going south, he hesitated because, he says, he did not want to get in the way of the smoke. Evidently he appreciated the probability of cinders being thrown upon him if he crossed over the engine. Then he proceeded on his way and saw the north-bound engine approaching the bridge "puffing up sparks." He does not hesitate this time, however, but walks upon the bridge directly over this engine and right into the cloud of smoke, cinders and sparks he saw being ejected from its smokestack. He deliberately, and without any necessity for so doing, placed himself in a position where the cinders and sparks from the engine must strike him. To do so was to voluntarily risk any danger that might arise from such a position; and was contributory negligence.

If the majority hold it was negligence for the engine to pass under the bridge puffing out cinders, how can we escape the conclusion that it was likewise negligent for the respondent to deliberately walk into the cinders? He cannot be heard to say that, while he knew sparks and cinders would be thrown up against and about him, he did not anticipate any serious danger. As we said in *Nordstrom v. Spokane & Inland Empire R. Co.*, 55 Wash. 521, 104 Pac. 809, 25 L. R. A (N. S.) 364, that "is a plea of knowledge of the danger, but not of its consequences, a doctrine which the law does not recognize . . . knowledge of danger is in law knowledge of the injurious results naturally and proximately flowing from that danger." I cannot escape the conclusion that this principle of law is applicable to the facts here disclosed, and that respondent's knowledge of the ejecting sparks and cinders being thrown with force upon and over the bridge, his voluntary walking into them with full knowledge of them, seeing them being so ejected, was a knowledge of the danger,

and in law a "knowledge of the injurious results naturally and proximately flowing from that danger."

The appellant's motion for instructed verdict should have been granted.

CHADWICK, J., concurs with MORRIS, J.