[No. 12074. Department Two. March 31, 1915.]

## T. E. Hoxsey, *Respondent*, v. Lyda Murray *et al.*, *Appellants*.[1]

APPEAL—REVIEW—VERDICT. The verdict of a jury upon directly conflicting evidence upon the only question at issue is conclusive on appeal.

APPEAL—REVIEW—DISCRETION—NEW TRIAL. A ruling on motion for a new trial for newly discovered evidence will not be disturbed except for abuse of discretion.

NEW TRIAL—GROUNDS—NEWLY DISCOVERED EVIDENCE—DILIGENCE—PROBABLE RESULT. Where the principal issue was as to whether the plaintiff, a physician, was authorized to perform an operation for removal of the Fallopian tubes and ovaries, defendant claiming that he was only authorized to remove the appendix, a new trial for newly discovered evidence showing that, after the trial, defendant had an operation to prove that the appendix had been removed, is properly refused for want of diligence, where, early in the trial, lasting several days, the plaintiff testified that he had not removed the appendix, and the defendant then offered to have the operation performed, but no operation was performed at that time and no continuance was asked, and the case was submitted on the evidence; especially where it is not satisfactorily shown that the new evidence would or ought to produce a different result.

PHYSICIANS AND SURGEONS—ACTIONS FOR SERVICES—ISSUES—EVIDENCE—ADMISSIBILITY. In an action to recover for the services of a physician in the removal of the Fallopian tubes and the ovaries, made necessary, according to plaintiff's testimony, by a diseased condition of those organs caused by the defendant's attempt to produce an abortion upon herself by the use of a catheter, evidence of statements made by the defendant to the plaintiff and others that she used a catheter upon herself for that purpose is admissible upon an issue as to whether the operation was necessary or was authorized by the defendant.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered November 11, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for services rendered by a physician. Affirmed.

[1]Reported in 147 Pac. 205.

*Nuzum, Clark & Nuzum* (*George H. Armitage*, of counsel), for appellants.

*Danson, Williams & Danson* (*George D. Lantz*, of counsel), for respondent.

MAIN, J.—The purpose of this action was to recover for professional services as a physician and surgeon rendered to Lyda Murray. The defendants, F. J. Murray and Lyda Murray, are husband and wife. In the bill of particulars annexed to the amended complaint, the account is itemized. Two items of this account are for operations performed upon Mrs. Murray: One operation, described as "curretting," performed on January 26, 1911, and the other as "laparotomy," performed on February 16, 1911. The defendants answered the amended complaint by certain admissions and denials, and by a cross-complaint. In the cross-complaint, it is charged that the plaintiff was employed on February 16 to operate upon Mrs. Murray for appendicitis, and for no other or different purpose; that the plaintiff, without authority, operated upon Mrs. Murray removing her ovaries and Fallopian tubes; that the operation was not necessary and not justified by her condition. The damages alleged to have resulted from this claimed unauthorized operation are then set forth. The plaintiff replied to the cross-complaint, denying the material allegations thereof, and affirmatively pleading that each and every service performed was at the instance and request and with the full knowledge and consent of both of the defendants.

After the issues were thus framed, in due time the cause came on for trial before the court and a jury, and a verdict was returned in favor of the plaintiff. A motion for a new trial being made and overruled, the defendants appeal.

The primary issue in this case as tried in the superior court was whether the operation performed on February 16th was authorized. There is no claim that the charge made for the services is unreasonable if the operation was author-

ized, or was reasonably necessary, taking into consideration the condition of the patient.

The evidence introduced by the plaintiff, if true, shows, that the operation described as "curretting" was made necessary by the attempt on the part of Mrs. Murray to perform an abortion upon herself by the use of a catheter; that Mrs. Murray admitted to the plaintiff, and to a number of other witnesses who testified, that she used the catheter for the purpose mentioned; that the Fallopian tubes and ovaries had become diseased on account of infection from the decaying foetus, or from an infection carried into the womb by the catheter; that, before the laparotomy operation was performed, Mrs. Murray was told that she would probably lose both Fallopian tubes; that it could not be told until after the incision was made just what was necessary to be done; that Mrs. Murray told the doctors present for the purpose of performing the operation to go ahead and remove everything that was diseased and to do everything that they thought best for her; that a median incision was made just below the navel; that when the Fallopian tubes and ovaries were examined, it was found that both tubes contained pus, and that the ovaries were diseased; that the husband was then called into the room and advised that, if the ovaries were not removed, they would give Mrs. Murray constant trouble, and that he told the doctors at this time to remove whatever was necessary; that the incision was not made at the place where it is ordinarily made in cases of operations for appendicitis; that the incision, when the operation is for the purpose of removing the appendix, is usually made at a place known in surgery as "McBurney's point," which is a point about half way between the navel and the hip bone on the right side; that no mention was made at any time by Mrs. Murray or by any of the doctors relative to the removal of the appendix; and that Mrs. Murray was told of the operation that had been performed upon her three or four days thereafter, and she then expressed her satisfaction

and approval thereof. The plaintiff and the two doctors who assisted him in the operation testified that the appendix had not been removed.

The evidence introduced on behalf of the defendants, if true, shows that the plaintiff was employed to remove the appendix, and for no other purpose; that Mrs. Murray had at no time used a catheter for the purpose of performing an abortion upon herself, but that the miscarriage was brought about by another cause.

It will thus be seen that the question at issue in the trial court was plainly one of fact and, consequently, within the province of the jury to determine. Unless the trial court committed errors of law, the judgment must be affirmed. Other facts will be stated and further reference to the evidence will be made in connection with the consideration of the points to which such facts or evidence may be particularly pertinent.

There are two questions in this case for this court to determine. Stated in the inverse order from that in which they appear in the appellant's brief, they are: First, did the trial court err in declining to grant a new trial on the ground of newly discovered evidence; and second, was it error for the trial court to admit the evidence relative to the use of a catheter by Mrs. Murray?

I. As already stated, the amended complaint in this case described the operation as "laparotomy," which means abdominal. No motion was made to make this amended complaint more definite and certain by setting out specifically just what was done at this operation. In the cross-complaint, it was claimed that the operation removing the ovaries and Fallopian tubes was unauthorized and unnecessary. The reply to this cross-complaint claims that the service performed was authorized. The trial of the cause began on September 12, 1913, and the taking of testimony was concluded during the afternoon of the 17th of the same month. During the first day of the trial, the plaintiff testified as to

the removal of the Fallopian tubes and the ovaries, and denied that the appendix had been removed by himself and associates when the operation of February 16th was performed. On the 16th, and while the case of the defendant was being presented, the following occurred: During the retirement of the jury, counsel for the plaintiff moved the court to appoint a commission of three physicians to examine Mrs. Murray as to her physical condition. Thereupon counsel for the defendants said that he would tender Mrs. Murray to two doctors and Doctor Windell for an examination as to whether her appendix had been removed, stating that he was very sure it had; and that he had been authorized to make this tender of her for an operation to determine this fact. Counsel for the plaintiff replied that he would have nothing to do with the matter; that if the defendants' counsel wanted the operation, he could have it performed. Subsequently during the same day while Mrs. Murray was upon the witness stand, she was asked by her counsel whether she was willing to submit her body to an operation to determine whether the appendix had been removed, and she replied that she was. Later during the afternoon of this day, the trial was adjourned until the following morning in order that the commission of physicians appointed by the court might examine Mrs. Murray. The court declined to direct the commission to perform the operation. The plaintiff refused to have anything to do with the matter of an operation. The defendants did not have it performed. A verdict for the plaintiff was returned on the 18th day of September, 1913. A motion for new trial was made on September 20, 1913.

In support of the motion for a new trial, the defendants' counsel made an affidavit that on the 24th day of September, 1913, he advised counsel for the plaintiff over the telephone that Mrs. Murray had employed Dr. Windell to perform an operation upon her upon the following morning to ascertain whether her appendix had been removed, and that three other

doctors would assist in the operation, naming them; that if counsel for the plaintiff desired, Dr. Hoxsey, or any representative of his, might be present at the operation; that plaintiff's counsel replied that he did not believe they would care to have a physician present, or take any part in the operation. According to the affidavits of the physicians who were present at the operation, it was performed on September 25, 1913. All four of these doctors in their affidavits state that they found but one surgical wound upon the abdomen of Mrs. Murray at the time of this operation. Two of the doctors state that the appendix "had been removed some time previously by a surgical operation." Two of the doctors do not say in their affidavits that the appendix had been removed by a surgical operation, but state: "We found that there was no appendix there." Mrs. Murray in her affidavit states that but one abdominal operation had been performed upon her prior to the trial of the cause.

In resisting the motion for a new trial, the plaintiff answered the affidavits of the defendants by filing the affidavits of five or six physicians, all of whom in their affidavits state that it is impossible to determine from the scar or surgical wound found upon the body of any person whether or not more than one operation had been performed upon that person's abdomen; that frequently a second operation is performed by opening the abdomen at the same point where the scar or surgical wound of the first or former operation is, removing the scar, and sewing the wound; that thereupon the same heals so that it is impossible to determine whether one or more operations have been performed; that the appendix of Mrs. Murray may have sloughed off as a result of suppurative inflammation, leaving a scar similar to that which is left when the appendix is removed by surgery; and that it would be impossible to determine from the appearance thereof whether it had been removed by an operation, or by reason of sloughing off.

The defendants claim by their affidavits they have made a showing of newly discovered evidence which entitled them to a new trial. The granting of a new trial upon the ground of newly discovered evidence is a matter largely within the discretion of the trial judge. Before the appellate court will substitute its judgment for that of the judge presiding at the trial, it must appear with reasonable certainty that such discretion has been abused to the prejudice of the appellant. In *Coffer v. Erickson*, 61 Wash. 559, 112 Pac. 643, upon this question it was said:

"The granting of a new trial on the ground of newly discovered evidence is a question necessarily so largely in the discretion of the trial judge that it must appear with reasonable certainty that such discretion has been abused to the prejudice of the appellant, before the appellate court will substitute its judgment for that of the presiding judge, who has observed the proceeding throughout the trial."

It is a well known rule that evidence which could have been produced upon the trial by the exercise of reasonable diligence does not constitute newly discovered evidence. In this case, as appears from the facts stated, during the trial the defendants claimed the fact to be that the appendix had been removed from the body of Mrs. Murray, and her body was tendered for the purpose of having an operation performed to determine that fact. The trial court rightly declined to direct the commission appointed by him to perform the operation, because of lack of power. The plaintiff refused to have anything to do with the matter of the operation. The defendants did not have it performed. Neither did they claim surprise, nor ask for a continuance until an operation could be performed and the fact determined. It will hardly be claimed by the defendants that, in tendering Mrs. Murray for the operation, they were suggesting to the plaintiff that he do an unreasonable thing. If it were a reasonable and proper thing to tender Mrs. Murray for the operation, it would be equally reasonable that the defendants, claiming

that the appendix had been removed, should ask for a continuance of the trial in order that they might determine such fact. Early in the trial, which lasted some days, the defendants were informed by the testimony of the plaintiff that he had not removed the appendix. If the defendants desired to secure evidence as to what the fact was by means of an operation, they could then have asked for a continuance until such operation could be performed and the fact ascertained. This they did not do, but continued with the trial and, after the verdict went against them, proceeded to ascertain the fact which they claimed during the trial did exist. The law does not look with favor upon submitting a case to a jury upon one set of facts and, in the event of an adverse verdict, obtain a new trial upon another state of facts which were known at the time of the submission, or by the exercise of reasonable diligence could have been known. In *Coffer v. Erickson, supra,* the appellant claimed the right of a new trial upon the ground of newly discovered evidence. It was there said:

"After having knowledge of the facts complained of, the appellant offered his testimony and, at the close thereof, formally rested his case. He should not be permitted to submit his case on one set of facts and, if a verdict is found against him, obtain another trial on another set of facts which were known to him at the time of such submission. Such has been the uniform holding of this court where no continuance was asked for."

Before a new trial is granted on the ground of newly discovered evidence, it ought to be satisfactorily shown, not that the evidence might possibly produce a different result, but that it would, or ought to do so, if the jury yielded to its legitimate influence. *McKilver v. Manchester,* 1 Wash. T. 255; *Binns v. Emery,* 45 Wash. 215, 88 Pac. 133; *In re Wells,* 60 Wash. 518, 111 Pac. 778; *Hardman Estate v. McNair,* 61 Wash. 74, 111 Pac. 1059; *Knapp v. Chehalis,* 65 Wash. 350, 118 Pac. 211.

After a careful review of the evidence in this case, as well as an attentive consideration of all of the affidavits filed in support of the motion for new trial, we are not constrained to believe that, if a new trial were granted and evidence was offered as covered by the affidavits of both parties upon the motion for a new trial, it would, or ought, to produce a different result. The appellants cite a number of cases from other jurisdictions which they claim support their contention that the evidence in question is newly discovered. All of these authorities have been carefully read, and are plainly distinguishable upon the facts from the present case. The two cases most nearly in point, one from the supreme court of the state of Kansas, and the other from the Kentucky court of appeals, will here be reviewed:

In *Bousman v. City of Stafford*, 71 Kan. 648, 81 Pac. 184, the plaintiff brought suit against the defendant for damages for injuries received in a fall caused by a defective sidewalk. The injuries sustained were claimed to be internal. The defense was that the plaintiff was not injured. The trial occurred on May 27, 1903, and a verdict was returned for the defendant. Thereafter a motion for a new trial was interposed. On August 12, 1903, the plaintiff was operated upon by a surgeon who, upon opening the abdomen, found that as a result of the injury an intestine had been ruptured, and an abcess had formed from which various complications had ensued. The purpose of the operation appears to have been, not for the purpose of discovering testimony, but for the purpose of relieving the plaintiff from a condition of distress which he suffered. It was there held that the facts disclosed by the operation came within the rule of newly discovered evidence.

In *Anshutz v. Louisville R. Co.*, 152 Ky. 741, 154 S. W. 13, a young married woman was injured while a passenger on one of the cars of the Louisville Railway Company. The accident occurred during the month of April, 1910. At the time of the injury, she was enceinte, and thereafter on the

6th day of September, 1910, there was born to her a baby. In April, 1911, the plaintiff had undergone a serious operation, at which time it was shown, by several physicians and surgeons who were present, that there were removed from her body both Fallopian tubes and the whole of the left ovary and a part of the right. The cause was tried in December, 1911. On the trial, the physicians and surgeons who were present at the operation in April, 1911, testified with reference to the nature of the operation, and in addition that, by reason thereof, the plaintiff was barren and could never have another child. This was one of the chief elements of damage claimed. They further stated, at the time of the trial, that there had developed a tumor in the abdomen of the plaintiff which sooner or later would necessitate another operation. On June 3, 1912, the plaintiff gave birth to another baby. Thereupon, in accordance with the statute of the state of Kentucky, the railway company filed a petition for a new trial on the ground of newly discovered evidence. The Kentucky court of appeals held that the evidence as to the birth of the second child was newly discovered, and granted a new trial because it was a material matter so far as the amount of damages was concerned.

In neither of the cases just referred to was it claimed upon the trial, either that an operation was a reasonable or proper method for the purpose of ascertaining the fact in the one case as to whether the plaintiff was internally injured, or in the other for determining whether the plaintiff was afflicted with the growth of a tumor. In the Kansas case, the operation seems to have been performed in the ordinary course of affairs for the purpose of relieving a painful condition. In the Kentucky case, the newly discovered evidence was the product of the operations of nature. We think neither of those cases reach the question here presented. As already stated, in this case the defendants, upon the trial, claimed the fact to be the same as their affidavits in the motion for a new trial showed. They desired the plaintiff,

against whom this fact would militate, if it were true, to perform the operation and produce the evidence. They there recognized by their conduct and tender that an operation performed for the purpose of ascertaining the fact in question would not be unreasonable. Had the question not been raised upon the trial in any form, and subsequently, in the ordinary course of affairs, an operation had been performed, and the fact disclosed while the motion for a new trial was pending, a different question would be presented, and one more closely analogous to the situation in the two cases mentioned. In addition to this, the principal contention in the case now before us was whether the operation for the removal of the Fallopian tubes and the ovaries had been authorized. The facts shown by the affidavits in support of the motion for a new trial would, on the one hand, contradict the doctors wherein they testified that they had not removed the appendix, and on the other, corroborate the defendants in their claim that the plaintiff was employed for the purpose of removing the appendix. It would not tend to corroborate the defendants that the operation removing the Fallopian tubes and the ovaries was unauthorized or unnecessary. In both of the cases above referred to, the newly discovered evidence bore upon a major issue in the controversy. In the one case, it disproved the testimony offered on the trial that the plaintiff was not injured. In the other, it disproved the testimony offered on the trial that the plaintiff in that case was barren.

In *Armstrong v. Yakima Hotel Co.*, 75 Wash. 477, 135 Pac. 233, it was said:

"What we have said disposes of all of the grounds of the motion for a new trial save the claim of newly discovered evidence. The affidavits in support of the motion indicate that the new evidence would be merely of an impeaching and cumulative character, and not of a nature reasonably calculated to change the result. The refusal to grant a new trial upon an offer to produce new evidence impeaching or going to the credibility of the opposing party is no abuse of discretion."

Upon this branch of the case we conclude that the trial court, in denying the motion for a new trial on the ground of newly discovered evidence, did not abuse its discretion.

II. The defendants claim that it was error for the trial court to permit any evidence to be introduced relative to the fact that Mrs. Murray had told the plaintiff, and other witnesses who testified, that she had used the catheter in attempting to perform an abortion. When the plaintiff was on the witness stand, he was asked by his counsel to state when he first met Mrs. Murray, and to detail what was said, and the condition in which she was at that time, and what was done. In answer to this question, among other things, the plaintiff testified that Mrs. Murray told him that she had used a catheter on herself for the purpose of getting rid of her offspring, and further, that he phoned a prescription to a drug store which was to be delivered to her. The witness was then asked, "What was that prescription?" And he answered the question. Thereupon counsel for the defendants objected on the ground that what the prescription contained was immaterial, and that any testimony with reference to her condition would be immaterial unless the intention was to "establish by it that the condition of the ovaries was brought on by this attempted abortion by herself." In response, counsel for the plaintiff stated, "That is the only thing I want to show," and continued by saying that the condition of Mrs. Murray was material in any event. Subsequently, when further testimony was offered as to the statements of Mrs. Murray relative to having used the catheter, a somewhat broader objection was interposed.

In the first objection, counsel seem to recognize that, if the testimony was for the purpose of showing that the condition of the ovaries was brought about by the attempted abortion, the testimony was material and relevant. The plaintiff claims that the objection does not save the question. It will be assumed, however, but not decided, that the objection is sufficient to raise the question as to the competency

of the testimony offered. The plaintiff claims and the testimony on his behalf shows, that the first operation, that of curretting, was brought about on account of the use of the catheter in an attempt at abortion; that, by the catheter, infection could be carried into the womb, and thereby produce the result found in the Fallopian tubes and the ovaries. And it is claimed, in support of the competency of the testimony, that, if the catheter was used and the diseased condition of the parts removed was due to this infection, or to an infection coming from a decaying foetus, the evidence would be competent and material as bearing upon the question whether the operation performed was authorized or necessary. The diagnosis as to what operation would be necessary must, of course, have been based in part upon the statements made by the patient. If the catheter was used as claimed, and was responsible for the infection which necessitated the removal of the tubes and the ovaries, the testimony as to the use of the catheter would be competent as bearing upon the operation which the respondent was authorized to perform, or as to what was reasonably necessary.

The judgment will be affirmed.

ELLIS, MOUNT, CROW, and FULLERTON, JJ., concur.