[No. 25337. *En Banc.* July 22, 1935.]

C. H. Morrison, *Appellant,* v. M. D. Dungan *et al.,*
*Respondents.*[1]

*J. W. Bryan,* for appellant.
*Hugh J. Aitken,* for respondent.

Blake, J.—This is an action on two promissory notes executed by the defendant M. D. Dungan on February 14, 1928, payable to his brother, John W. Dungan. The latter died, leaving these notes among the assets of his estate. The administratrix assigned them to plaintiff for the purpose of bringing suit. In defendants' answer to the complaint, the execution of the notes was admitted, but community liability was denied. Upon trial, the court found from the evidence that the notes were not community obligations, but only the separate obligations of M. D. Dungan. Accordingly, judgment was entered against M. D. Dungan alone. Plaintiff appeals.

To our minds, the evidence does not support the finding that the notes were not community obliga-

[1]Reported in 47 P. (2d) 988.

tions of M. D. Dungan and wife. It lacks that clear and convincing quality that is necessary to overcome the presumption that notes executed by the husband alone are community obligations. *Auernheimer v. Gardner,* 177 Wash. 158, 31 P. (2d) 515.

The evidence in support of the finding falls from the lips of M. D. Dungan alone. It is entirely uncorroborated. Such evidence, coming as it does from a vitally interested witness, is not necessarily to be accepted at its face value. *Gosline v. Dryfoos,* 45 Wash. 396, 88 Pac. 634. Mr. Dungan testified that the notes here involved were renewals of a note executed by him some years before as an accommodation maker for one Anderson; that Anderson got all the money loaned by John W. Dungan on the previous note, and that the community composed of M. D. Dungan and wife received from the transaction no benefit whatever. Anderson did not sign the notes involved here.

It appears from Mr. Dungan's testimony that, at the time of the initial transaction, Anderson was farming, under a crop lease, four or five hundred acres of land belonging to the community of M. D. Dungan and wife; that Anderson wanted to purchase three hundred twenty acres adjoining the Dungan land; that the money borrowed from John W. Dungan went into the purchase of that land. It appears that, at the time the original note was executed, Anderson had become badly involved in his farming operations and had become heavily indebted to respondents.

The original note was not produced. The evidence is not at all clear that Anderson even signed that note. On the contrary, it may be reasonably inferred that he did not. Mr. Dungan gave the following testimony:

"Q. Mr. Dungan, when—when were these original notes that you have spoken of given? A. I couldn't give the exact date, but I think it was in '18. Q. In 1918? A. Yes, I think so. Q. What—to whom were the

notes given? A. To J. W. Dungan. Q. To who?
A. J. W. Dungan. Q. Who is he? A. That was my
brother. Q. J. W. Dungan? A. Yes. Q. Your brother.
Who gave the notes? A. Well, I am not so sure whether
—whether Anderson wrote the note and I endorsed,
or whether I gave the note individually for him; I
couldn't say for sure, it has been so long."

Neither is it clear that Anderson had anything
whatever to do in procuring the loan. On the con-
trary, taking the most favorable view of the evidence
from respondents' standpoint, it appears that M. D.
Dungan obtained the money from his brother and
turned it over to Anderson at a time when the latter
was heavily obligated to the community. Under such
circumstances, the case falls squarely within the rule
of *Gould v. Culver,* 148 Wash. 689, 270 Pac. 93.
Samples of Mr. Dungan's testimony in this connec-
tion follow:

"Q. You can't tell the Court today whether your
brother sent the money to you? A. No, I cannot.
Q. You don't know. He may have sent it to you?
A. He may have sent it to me and I sent it to him.
Q. And Anderson at that time owed you money? A.
Yes, he owed me money. Q. What—were you married
at that time? A. He still owes me money. . . .
Q. And while he owed you this money he borrowed
from your brother, is that it? A. He borrowed from
my brother, yes. Q. And you signed the note to your
brother? A. I think so. Q. And you say that was
an endorsement? A. Yes. Q. And you don't know
whether you got the money yourself or not? A. Well,
I know he got the benefit of all that money. Q. He
got the benefit of it? A. He got the money. Q. But
you don't know whether—you don't know whether it
came through your hands or not? A. Well, I couldn't
say, but if it did, I turned it over to him. Q. Well,
then, your brother may have sent that money to you,
and you handed it over to him, is that it? A. Yes, it
could be that way."

We think the evidence offered by respondents failed utterly to overcome the presumption that the notes here sued on were obligations of the community composed of M. D. Dungan and wife.

The judgment is reversed, and the cause remanded with directions to enter judgment accordingly.

BEALS, MAIN, TOLMAN, STEINERT, and GERAGHTY, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent.

This is an ordinary fact case with very little law involved. The capable and experienced trial judge made findings upon the testimony adduced before him after seeing and hearing the witnesses testify. Upon the evidence adduced, the trial judge held that the debt sued on was a separate liability of M. D. Dungan and released the community from liability. I am unable to agree that there is any evidence preponderating against that finding and conclusion.

The judgment of the trial court should be affirmed.

MILLARD, C. J., and MITCHELL, J., concur with HOLCOMB, J.