[No. 25869. Department One. December 10, 1935.]

A. P. McCALL, *Respondent*, v. JOSEPH B. SMITH *et al.*, *Appellants.*[1]

[1]Reported in 52 P. (2d) 338.

M. W. Vandercook, for appellants.

Little & Collett, Robert W. Reid, and Robert L. Flanders, for respondent.

STEINERT, J.—Plaintiff brought this action to recover judgment upon a promissory note and to foreclose a real estate mortgage given as security therefor. Defendants' answer set up a general denial and three affirmative defenses, two of which were pleaded by way of cross-complaint. Trial by the court resulted in findings of fact and conclusions of law upon which a decree was entered in favor of plaintiff.

On and prior to January 10, 1934, appellants were the owners of certain improved real estate occupied by them as a home, in the city of Seattle. A mortgage on the property in approximately the sum of nineteen hundred dollars, held by the Prudential Savings &

Loan Association, was then in process of foreclosure. Appellants desired to raise a little over nine hundred dollars cash with which to purchase outstanding passbooks held by depositors of Prudential Savings & Loan Association, and which the association apparently was willing to accept in settlement of the mortgage indebtedness.

A few days prior to January 10, 1934, the appellant Joseph B. Smith, who is an attorney at law, approached Quinn-Smith Company, a corporation, with the view of obtaining the desired loan. Mr. Smith was told by the company that it would have to charge a broker's commission for securing the loan.

We preface our further recital of the facts by stating at this point that the principal question in dispute is whether Quinn-Smith Company agreed to loan, and eventually did loan, its own money to appellants, or whether it acted as a broker for appellants in securing the loan from a third party. The evidence upon this question does not present any serious conflict. The dispute concerns rather the conclusions of fact to be drawn from what was actually said and done by the parties to the transaction.

The negotiations with respect to the loan are largely evidenced by the following written instruments, each dated January 10, 1934:

(1) A formal application addressed to Quinn-Smith Company and signed by appellant Joseph B. Smith, authorizing the former to secure for the latter a loan of one thousand dollars on the real estate above referred to. In the application, Mr. Smith agreed to pay seventy-five dollars commission and also agreed that, in the event that he should refuse to sign the note and mortgage after the application for the loan had been accepted, he would nevertheless pay the commission agreed upon.

(2) A letter signed by Mr. and Mrs. Smith, appellants, which reads as follows:

"In connection with the loan you have arranged for me today for $1,000 on my home at 6722 21st Avenue, S. W., it is our understanding that while this loan is being made in your name, it is for the account of one of your clients."

(3) A note for one thousand dollars and a real estate mortgage in a like amount securing the same, both executed by Mr. and Mrs. Smith. The principal of the note and mortgage was payable in four semi-annual installments, the first three being for one hundred dollars each and the fourth being for seven hundred dollars. The interest was to be paid semi-annually at the rate of eight per cent per annum. An acceleration clause provided that, if default were made in the payment of principal or interest or in the performance of any covenant, including the covenant to pay all taxes at least ten days before delinquency, then the entire indebtedness should immediately become due without notice, at the option of the payee and mortgagee.

All of these papers were prepared by Quinn-Smith Company and, as stated, bore date as of January 10, 1934. The preliminary negotiations, however, began several days before, during which time Quinn-Smith Company made an inspection of the property preparatory to the loan.

After deducting the cost of title insurance and recording fee, totaling $17.50, and the fee of seventy-five dollars charged as broker's commission, Quinn-Smith Company paid the sum of $906.25, which was supposed to represent the balance of the loan, to Mr. Smith through the title insurance company. There is a discrepancy of $1.25 in the amount of the balance to be paid, which apparently was an inadvertence. That discrepancy, however, is of no importance here.

As soon as the transaction was completed and on the same day, Quinn-Smith Company endorsed the note, without recourse, to Bertha Felder, a client of its office, and on January 20, 1934, executed to her, and filed for record, a formal assignment of the mortgage.

The first installment of principal and interest fell due July 10, 1934. Appellants were unable to make the payment, although on July 17, 1934, they did pay the interest installment amounting to forty dollars. On July 23, 1934, Mrs. Felder endorsed the note and assigned the mortgage to Hughbanks, Inc., which is the same corporation as Quinn-Smith Company, the name having been changed in the meantime.

Mr. Smith, finding it difficult to pay the installments of principal as provided in the note and mortgage and being desirous of getting a lower rate of interest, concluded to apply to Home Owners Loan Corporation for a loan with which to pay off the existing loan. He discussed the matter with Hughbanks, Inc., and as a result of the discussion, an agreement was entered into on September 10, 1934, between Hughbanks, Inc., and appellants, whereby the terms of the note and mortgage were modified to the extent of reducing the rate of interest from eight per cent to six and one-half per cent per annum and extending the time of payment of the entire principal to July 10, 1937. The agreement specifically provided, however, that in all other respects the terms of the note and mortgage should remain the same. At that time, the first installment of taxes for 1933 had become due and was delinquent.

After the modification agreement had been executed, Hughbanks, Inc., wrote a letter to Mr. Smith, under date of September 28, 1934 [Friday], advising him that the mortgage was in an unsatisfactory condition because of the delinquent taxes and stating that, unless the same were paid by the following Tuesday, fore-

closure proceedings would be commenced. About the same time, Hughbanks, Inc., endorsed the note and assigned the mortgage to respondent herein, who admittedly is only a nominal plaintiff. This action was instituted by the filing of a complaint on October 13, 1934.

In addition to these undisputed facts, there was considerable evidence on behalf of respondent to the effect that, in the transaction respecting the loan, Quinn-Smith Company acted simply as a broker to secure the loan for the appellants, that it previously had interviewed a number of people who it thought would be willing to place such a loan, and that it finally obtained Bertha Felder as a willing lender. The credibility, at least, of this evidence, the appellants challenge and dispute.

Appellants' contentions are based on their three affirmative defenses. In the first affirmative defense, it was alleged that respondent himself had never paid the delinquent taxes on the property, from which it is now argued that the action was prematurely brought. But the appellants themselves covenanted to pay the taxes before delinquency, and the breach of that covenant authorized the owner and holder of the note and mortgage to precipitate their maturity. It is true that appellants themselves subsequently paid the taxes, but not before this action was commenced. At the time of the trial, another installment of interest had become due, which appellants neither paid nor offered to pay. To the contrary, they insisted that respondent's action be dismissed, with costs to themselves. Assuming that there were some equities latent in the situation, which the court might have protected upon a proper offer to do equity, appellants did not make any tender of any amount due or admitted to be due, but asserted and insisted upon what they con-

ceived to be their legal rights. Respondent's right to sue having matured, his action could not be attacked as having been prematurely brought.

The second affirmative defense, and the principal contention of appellants, is that the note was tainted with usury and was, therefore, subject to the penalties of the usury statute, Rem. Rev. Stat., § 7304 [P. C. § 3161]. According to appellants' computation, the contract was usurious to the extent of $51.57. If the contract was, in fact, usurious, the penalties exacted by the statute, according to appellants' computation, would amount to $280.90. Appellants assert that the amount actually loaned to them, and therefore the true principal of the note, was $923.75, which they say should, in any event, have been reduced by the above amount of $280.90, leaving only $642.85 for which judgment should have been entered.

Appellants' entire computation proceeds upon the theory that the charge of seventy-five dollars for commission should be considered, not as a lawful brokerage charge, but as an interest charge. Inasmuch as the extent of the usury claimed, namely $51.57, is less than the seventy-five dollar charge, it is obvious that, unless the latter charge be held to be an interest charge, then there was no usury in the transaction. So, then, the vital question to be determined here is whether or not the seventy-five dollars was properly chargeable as a broker's commission.

The answer to this question depends upon whether Quinn-Smith Company was acting as a broker or agent for appellants in securing the loan, or whether it acted either as a principal in loaning its own money to them, or else as agent for the lender, or for both the lender and the borrower. If it acted solely as the broker for appellants, it had the right to charge the commission,

otherwise it did not. Rem. Rev. Stat., § 7304 [P. C. § 3161].

■ We begin our discussion of this phase of the case with the rule, definitely settled in this state, that usury is an affirmative defense and that the burden of proof is upon him who asserts that the transaction is usurious. *Washington Fire Ins. Co. v. Maple Valley Lbr. Co.,* 77 Wash. 686, 138 Pac. 553; *Bovee v. Yamamoto,* 121 Wash. 517, 209 Pac. 697.

■ Since the question whether or not there was usury depended upon the capacity in which Quinn-Smith Company was acting, the burden was upon appellants to prove that the company was acting in such capacity as would render the loan usurious. Whether a broker is to be regarded as acting for the borrower, for the lender, or for both, depends on all the facts and circumstances of the particular case, and no one fact, seized from its setting, can be said to be conclusive or controlling under any and all circumstances.

We have here, at the outset, a written instrument by the terms of which Mr. Smith authorized Quinn-Smith Company to obtain for him a loan of one thousand dollars and agreed to pay that company a commission of seventy-five dollars. There is no contention that Mr. Smith was not aware of that provision in the instrument or that he did not understand its purport. In fact, he admitted that, before he signed the instrument, the company had told him that it would charge a commission. While these facts are not controlling, they are circumstances to be considered.

We have next a letter signed by appellants adverting to the loan as being one that Quinn-Smith Company had arranged for *them,* the appellants, in the sum of *one thousand dollars,* and expressive of their understanding that, although the mortgage was to be taken in the name of Quinn-Smith Company, it was

really for the account of one of the company's clients. While this fact might not be controlling, it, likewise, is a circumstance to be considered. *Clemson v. Best,* 174 Wash. 601, 25 P. (2d) 1032.

We have next the evidence of respondent, which was accepted and believed by the court as establishing the fact that Quinn-Smith Company had previously interviewed a number of people seeking a lender, pursuant to the authority given it by the appellants. Then we have the fact, disclosed by the note itself, that Quinn-Smith Company, almost immediately upon receiving the note, endorsed it, without recourse, to Mrs. Felder; also, the fact that, at the same time, it assigned to Mrs. Felder the title insurance policy; further, the fact that, very shortly thereafter, it executed to her an assignment of the mortgage. These facts must also be taken into consideration as circumstances bearing on the case.

On the other hand, the situation must also be considered from appellants' point of view. They emphasize these facts, as showing that Quinn-Smith Company was acting as principal: Quinn-Smith Company took the note and mortgage in its *own name;* it thereafter negotiated the note and assigned the mortgage to one of *its clients;* it later came into possession of the note after it had been endorsed by the client, *without recourse,* and took from her a reassignment of the mortgage; it is now suing in the name of a nominal plaintiff.

Undoubtedly, these facts are to be given careful consideration and even a close scrutiny to ascertain whether the entire transaction was but a makeshift to circumvent the statute inhibiting usury. That the trial court did weigh and carefully consider these circumstances is apparent from the memorandum decision.

Moreover, each of these circumstances, relied on by appellants, has its explanatory counterpart.

Although the note and mortgage were taken in the name of the broker, it was understood between the parties at the time that it was for the account of a third party. The mere fact that the note and security were, for purposes of convenience, taken in the name of the broker or agent did not of itself render the loan usurious. *Stansell v. Georgia Loan & Trust Co.,* 96 Ga. 227, 22 S. E. 898; *Title Guarantee & Trust Co. v. Wheatfield,* 123 Md. 458, 91 Atl. 757; *Mallory v. Columbia Mortgage & Trust Co.,* 150 Tenn. 219, 263 S. W. 68; *Allen v. Newton,* 219 Mo. App. 74, 266 S. W. 327; *Webb v. Southern Trust Co.,* 227 Ky. 79, 11 S. W. (2d) 988; *Clemson v. Best,* 174 Wash. 601, 25 P. (2d) 1032. See, also, annotations in 21 A. L. R. 823, 827, and 63 A. L. R. 832.

The fact that the note was subsequently negotiated, and the mortgage assigned, to the client, was a natural consequence of the original transaction. The fact that Quinn-Smith Company, or Hughbanks, Inc., later came into possession of the note and mortgage loses much of its force when it is remembered that Mrs. Felder had held the note and mortgage for over six months, and that, when she did transfer them to the broker, the first semi-annual installment of principal was past due and unpaid.

The fact that the respondent here is but a nominal plaintiff might, when considered alone, be taken to indicate that the real owner was seeking to conceal its connection with the matter. But assignments for purposes of collection or suit are not unusual, and any inference of sinister motive in this case could not survive a showing that the original transaction was lawful.

The court saw and heard the witnesses, carefully weighed the evidence, and resolved the issues of fact

in favor of the respondent. It would be impossible for us to say upon the record before us that the preponderance of the evidence was against the findings and decision of the trial court.

 The third affirmative defense pleaded the modification agreement as a ground for abating the action. There is scarcely any argument in the briefs upon this phase of the case, and little need be said on the subject. The modification agreement merely reduced the rate of interest and extended the time of payment of the loan. In all other respects, the terms of the note and mortgage remained the same. In the note and mortgage, the appellants covenanted and agreed to pay the taxes before delinquency. As already stated, the covenant was breached by them, and, under the acceleration clauses, the right of action of the respondent matured.

 Appellants' final assignment of error is based upon the refusal of the court to grant their motion for a new trial. The only ground urged in support of the motion is newly discovered evidence.

It appears by the affidavit of appellants' counsel that, some time after the trial, he interviewed Mrs. Felder, the client from whom Quinn-Smith Company had procured the money for the loan, and learned from her and her husband that they had not *loaned* the money to appellants, but had *bought* the note and mortgage from Quinn-Smith Company some time after their execution. Counsel's affidavit further stated that Mr. and Mrs. Felder declined to give their affidavits touching these matters because of business relations between themselves and Hughbanks, Inc. The affidavit of counsel was made and filed on the day that findings, conclusions and decree were signed and entered by the court.

Motions for new trial upon the ground of newly discovered evidence are addressed to the sound discretion of the trial court, and the court's exercise of that dis-

cretion will not be disturbed except for manifest abuse. *Coffer v. Erickson,* 61 Wash. 559, 112 Pac. 643; *Hoxsey v. Murray,* 84 Wash. 588, 147 Pac. 205; *Molitor v. Blackwell Motor Co.,* 112 Wash. 279, 191 Pac. 1103; *Humphrey v. Alaska Junk Co.,* 149 Wash. 155, 270 Pac. 302.

Appellants had pleaded in their answer that Bertha Felder and the respondent herein were agents of both Quinn-Smith Company and Hughbanks, Inc., and that the assignments were made merely for the purpose of defrauding appellants. In his amended reply, the respondent alleged that the appellants knew at the time of the consummation of the loan that the money had been obtained from Mrs. Felder. Appellants apparently made no endeavor to have Mrs. Felder at the trial as a witness. But more than that, they did not ask for any continuance before, or during, the trial for the purpose of obtaining her evidence, although they had her address in the city of Seattle. They took their chances on the evidence as adduced to the court, and only after an adverse decision did they make inquiry of Mr. and Mrs. Felder. We do not think that, under these circumstances, the court abused its discretion in refusing to grant a new trial.

The decree is affirmed.

MITCHELL, TOLMAN, BLAKE, and GERAGHTY, JJ., concur.