[No. 39840.     Department Two.     February 6, 1969.]

Joe Malotte, *Respondent*, v. S. Gorton *et al., Appellants.**

*Claude C. Snider* and *Dennis R. Duggan*, for appellants.

*McMullen, Brooke, Knapp & Grenier*, by *Robert E. Brooke*, for respondent.

Hill, J.—Defendants, Dr. S. H. Gorton and Laura R. Gorton, his wife, appeal from a judgment rendered in favor of Joe F. Malotte in an action on a promissory note for $10,000, dated December 1, 1965. The note (signed only by Dr. Gorton[1]), was due March 1, 1966, and provided for in-

*Reported in 450 P.2d 820.

[1]Robert F. Ferguson signed as a witness.

terest at 6 per cent and, in case of a suit on the note, for a reasonable attorney's fee.

The note was not paid when due, but on April 1, 1966, a payment of $1,000 was made and an extension of time granted to July 1. The loan was not paid at that time. Dr. Gorton made efforts, through several financial agencies, to secure a loan on his various properties for the purpose of paying the balance due on the note. These were all unsuccessful, and the action on the note was commenced in July, 1966. It was tried on March 3, 1967, and the judgment was entered on March 31, 1967, in the sum of $10,816.20,[2] together with costs and disbursements to be taxed.

The trial court in its memorandum decision directed that judgment be "against the defendants as a community." In preparing the judgment, counsel for the plaintiff (doubtless by inadvertence) made it run against "the defendants S. Gorton and Laura R. Gorton and the marital community composed thereof."

The defendants appeal from that judgment, making three contentions: (1) the note was not a community obligation; (2) the note was usurious; and (3) in any event, there should be no separate judgment against Laura R. Gorton.

*Was the note a community obligation?*

The circumstances surrounding the execution of the note are a bit on the bizarre side. Dr. Gorton and his cousin, Robert F. Ferguson, left Vancouver, Washington at about 3:30 a.m. to fly to the Seattle-Tacoma Airport where they met Joe F. Malotte, who had come from Everett. They had a 30-minute conference in the restaurant at the airport, during which Dr. Gorton signed the $10,000 note, with Ferguson signing as a witness, and delivered it to Malotte. Malotte delivered a $10,000 check to Dr. Gorton who, in turn, delivered a $10,000 check to Ferguson drawn on the joint account of Dr. and Mrs. Gorton in the Woodland Branch,

---

[2]This was made up of $9,200 principal ($800 of the April 1, 1966 payment had been applied to principal; $200 to interest to that date); $456.20 interest, and $1,160 as an attorney's fee. The amounts involved are not questioned.

Bank of Cowlitz County. Ferguson delivered a $1,000 check to Malotte.

The meeting over, Dr. Gorton and Ferguson returned to southwest Washington. They went to the Woodland Branch, Bank of Cowlitz County where Dr. Gorton deposited the Malotte check in the same joint account on which Dr. Gorton's check to Ferguson was drawn. That check was then given the status of a cashier's check.

Unquestionably the transaction was designed to secure $10,000 for Mr. Ferguson, and Dr. Gorton had given his note to Malotte for that purpose. That Dr. Gorton was an accommodation maker is no defense to an action on the note (RCW 62.01.029[3]), nor does it prevent the note from being a community obligation.

█ The trial court's memorandum decision covers the community obligation issue admirably.

> The parties do not disagree, as is evidenced by their briefs, as to certain fundamental principles. No argument exists that under the law the husband is the manager of the community personal property in the State of Washington. They do not disagree that there exists a strong presumption that a note signed by the husband alone, or an indebtedness incurred by him is a community debt.
>
> Defendants submit that, "The acid test to be applied in determining whether an obligation incurred by the husband is a community debt is whether or not the transaction was intended to be for the benefit of the community." Fies vs. Storey, 37 Wash. 2d 105, [221 P.2d 1031 (1950)], or as stated in Beyers vs. Moore, 45 Wash. 2d. 68, [272 P.2d 626 (1954)], "If there was any expectation of benefit to the community . . . at the time the note was signed . . . it was a community obligation."
>
> The presumption that the husband is presumed to be acting for the benefit of the community is rebuttable, and may be overcome by evidence showing otherwise. Household Finance Corp. vs. Corby, 61 Wash. 2d. 184, [377 P.2d 441 (1963)]. See also Beyers vs. Moore, supra. "There is

---

[3]"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." RCW 62.01.029

a presumption that the community is liable which can only be overcome by clear and convincing evidence." The purpose [burden] of proving that the promissory note was not a community obligation was upon the community.

The only evidence offered by defendants was the testimony of the defendants themselves. Dr. Gorton testified that there was no benefit to the community, as did his wife. Significantly again however, Mrs. Gorton testified that the first time that she had any knowledge of the matter was when her husband told her a man was coming out to appraise the house.[4] "Whether a wife knows of a community indebtedness incurred by the husband is immaterial if the indebtedness was actually incurred in connection with the business of the community." Fies vs. Storey, supra. To the same effect see Capital National Bank vs. Johns, 170 Wash. 250, [16 P.2d 452 (1932)] at page 258.

As previously stated, the test is whether or not the transaction was intended to be for the benefit of the community, or expectation of benefit to the community. The only testimony produced by defendants in this respect came from themselves alone. "It is entirely uncorroborated. Such evidence, coming as it does from vitally interested witnesses, is not necessarily to be accepted at its face value." See Morrison vs. Dungan, 182 Wash. 503 [47 P.2d 988 (1935)].

The testimony adduced by defendants can only be adjudged to be in retrospect. No testimony was produced by defendants to show whether the transaction was intended for the benefit of the community, or was there an expectation of benefit to the community. The question of benefit to the community as of the time of the transaction itself is, to-wit: at that time, December 1, 1965, did the community intend or expect to receive a benefit from the transaction entered into by defendant S. H. Gorton. The record is entirely void of any testimony in this respect. Looking back from the date of the trial to December 1, 1965, defendant S. H. Gorton testified there was no benefit to the community, and his wife, the other defendant, at the time of the trial reiterated Dr. Gorton's position, but such testimony fails to rebut the presumption inasmuch as it is not clear and convincing that the transaction was not intended for the benefit of the com-

---

[4]This was in connection with the doctor's efforts to secure a loan on his properties to raise the money to pay the note.

munity. This testimony failed utterly to overcome the presumption that the note here sued on was the obligation of the community composed of S. H. Gorton and Laura Ruth Gorton, husband and wife.

Supplementary to the foregoing discussion by the trial court, it is conceded that there had been earlier business transactions between Dr. Gorton and Ferguson, and most significantly, Ferguson did not testify.

We are in accord with the determination of the trial court that the presumption that Dr. Gorton was acting on behalf of the community has not been overcome.

*Was the note usurious?*

The claim of usury has no basis except sheer speculation. There is no contention that the defendants are being asked to do more than pay back the $10,000 they received from the plaintiff with interest at the rate of 6 per cent. Their contention is that the plaintiff may be receiving more than 12 per cent interest because Ferguson gave him a check for $1,000 at the airport meeting. Ferguson is not a party to this action, and he was not a witness. There is no evidence that the check was consideration for the loan. Asked about it on cross-examination, the plaintiff testified that it was for his time and expenses in making a trip to California to investigate the proposition in which Ferguson was intending to invest the $10,000 and, also, to cover credit checks on Dr. Gorton. The plaintiff enumerated expenditures of $155 and the defendants urge that the other $845 was received for making the loan. If we assume that usury could be made out of that situation, the fact remains that the plaintiff was entitled to compensation for the time and services involved in his trip to LaFayette, California to investigate the proposition in which Ferguson wanted to invest $10,000 of another person's money.

The trial court summed the matter up quite accurately when it said:

Defendants have raised the defense that the note was usurious in that plaintiff required from Ferguson a substantial discount refund or kickback which resulted in the interest as provided in said note to be in excess of that permitted under the laws of the State of Washington.

With this contention we can find no merit. Factually after the interchange of the note and the two checks, Ferguson did apparently give plaintiff his check for one thousand dollars as an agreed amount between Malotte and Ferguson (for services performed by Malotte). Defendants offered no testimony to rebut the testimony of plaintiff in this respect, and they produced no testimony that the one thousand dollars was a substantial discount, refund or kickback, nor that the particular transaction was in conflict with RCW 19.52.020.

■ In *McCall v. Smith,* 184 Wash. 615, 622, 52 P.2d 338 (1935), we said, "usury is an affirmative defense and that the burden of proof is upon him who asserts that the transaction is usurious."

We are likewise in accord with the trial court—that the defendants did not sustain that burden.

*Was the note a separate obligation of Laura R. Gorton?*

Obviously it was not. The plaintiff made no such claim in the trial court or on this appeal.

As we have indicated on page 307, the trial court in its memorandum opinion indicated that the judgment should be against defendants as a marital community. The judgment, as entered, could be construed (as we have indicated on page 307) as a judgment against each of the defendants and their marital community. It was not a matter which required an appeal to correct; a request to counsel and the trial court would have sufficed.

The judgment appealed from is affirmed with instructions to correct the form of the judgment so that it is clear that it is a judgment against S. H. Gorton, individually, and S. H. Gorton and Laura R. Gorton as a marital community.

HUNTER, C. J., HAMILTON and NEILL, JJ., and OTT, J. Pro Tem., concur.