[No. 6408.   Decided January 3, 1907.]

Allin Binns, *Respondent*, v. Horace J. Emery, *Appellant*.[1]

New Trial—Grounds—Newly Discovered Evidence—Sufficiency of Showing. In an action for malpractice in the treatment of severed tendons and nerves, in which the complaint alleged negligence nine days after the wound was dressed and nearly healed, in recklessly removing stitches and in the subsequent treatment, it is error to deny a motion for a new trial on the ground of newly discovered evidence, when it appears by the affidavit of the defendant that the only time he had removed stitches was at his office after the plaintiff had left the hospital and he supposed that the same would be relied upon by the plaintiff, that at the trial the plaintiff had claimed the occurrence to have taken place at the hospital, and it appeared by the affidavits of three witnesses that they had been present at every treatment at the hospital and that no stitches had been removed, and that they would so testify on another trial, it further appearing that two of such witnesses had removed from the state before the trial and their whereabouts was unknown to the defendant at that time, the third witness being a nurse and the defendant had not known that she was present at all of the treatments (Dunbar, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Poindexter, J., entered December 18, 1905, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover damages for malpractice.  Reversed.

*Barnes & Latimer*, for appellant.

*Belt & Powell*, for respondent.

Root, J.—This action was brought by plaintiff to recover damages against defendant, a physician and surgeon, for

[1]Reported in 88 Pac. 133.

alleged malpractice in the treatment of an injury to plaintiff's wrist, caused by a collision with a street car on the 18th day of May, 1905. By reason of the accident, plaintiff's wrist was severely cut and the tendons and nerves thereof were severed. He was removed to a hospital and the wound dressed by the defendant and Dr. Witter, a physician and surgeon residing in Spokane. It is conceded that this was skillfully done. The severed tendons and nerves were brought together and sewed together with ordinary catgut sutures; the skin and flesh were then drawn together and sewed with like sutures. The wound yielded to such treatment and gave but little pain to plaintiff. Everything went well with the wound until the 9th day after it was dressed. It is alleged by the plaintiff that at this time, some nine days after the accident and after the wound was nearly healed, the defendant undertook to remove the sutures, and in so doing, carelessly, negligently and recklessly took hold of one of the sutures, and recklessly and violently jerked the knot toward him, drawing the same through the tendons and nerves, thus tearing them all apart, and opening up said wound afresh; from all of which plaintiff suffered great pain, and the wound failed to heal and a permanent injury resulted by reason thereof. The plaintiff further alleges in paragraph 5 of his complaint, that defendant continued to treat the wound for about thirty days after he had pulled the knot through the cords and tendons, and was negligent in such treatment in not keeping the wound clean, and in applying to the same foul and unclean bandages. Plaintiff further alleges, in paragraph 7, that his left hand is permanently useless, stiff, numb and dead, and that the nerves and tendons thereof are permanently destroyed; all as the result of said alleged malpractice.

The defendant, Horace J. Emery, by his amended answer, denies that he ever did remove or attempt to remove any suture from said wound, as alleged by the plaintiff, and denies all of the other material allegations of the complaint.

He alleges that the wound was skillfully treated and skillfully dressed, and had commenced to heal, and would have healed, had it not been for the failure of the defendant to remain at the hospital and otherwise obey his directions. He alleges in his answer that the hand would have been restored to its normal condition in appearance, but its former condition of usefulness never could have been restored owing to the nature and extent of the injury. He denies all of the allegations of the plaintiff as to the removal of the sutures by pulling the knot thereof through any tendon or nerve, or otherwise, and also denies all of the plaintiff's allegations as to the application of uncleanly bandages. By way of affirmative defense defendant alleged that the plaintiff, contrary to the advice and direction of defendant and the nurses and attendants of the hospital, left the latter and refused to receive further nursing and treatment from said hospital or from defendant, but attempted for a time to treat the wound himself, and thereby allowed the same to become infected and the nerves and tendons of the wrist to become diseased, and that had it not been for this conduct on his part, the injury would have been completely and satisfactorily cured. The trial resulted in a judgment against the defendant, who appeals to this court.

The action of the trial court in overruling defendant's challenge to the sufficiency of the evidence is assigned as error, as is its denial of defendant's motion for a new trial. While the evidence in support of plaintiff's complaint might not be convincing to this court, yet we cannot say, as a matter of law, that it was insufficient to sustain a verdict, its credibility having been for the consideration of the jury, and the trial court not having deemed it so insufficient as to call for a new trial. Several errors are assigned upon the rulings of the trial court on the admission or exclusion of evidence. As these questions will probably not arise upon a new trial, which, for reasons hereinafter stated, we find it

necessary to direct, it will not be necessary to now consider them.

After the verdict, the defendant interposed a motion for a new trial, based upon several grounds, one of which was "newly discovered evidence material to the party making the application, which could not by reasonable diligence have been discovered and produced at the trial." It will be noticed that the principal negligence asserted and relied on by plaintiff was the alleged conduct of defendant in removing certain sutures from the wound. Defendant claims that the only time he removed any stitches was at his office after the defendant had left the hospital, and he supposed that plaintiff would fix that as the time when the alleged malpractice occurred. Instead of this, the plaintiff upon the witness stand stated that the conduct complained of occurred at the hospital before he removed therefrom.

Soon after the trial, defendant obtained the affidavit of one Schreckengost, who states therein that he was a patient occupying the same room as plaintiff during all the time that the latter was at the hospital, and that he was present at every treatment given by defendant to plaintiff, and saw each and all of said treatments, and that no such occurrence took place as testified to by plaintiff; that defendant never removed any stitch from plaintiff's hand, or wrist, while at the hospital; that the injury to plaintiff's wrist, after the first operation, healed nicely, and continued so to do until he left the hospital; that plaintiff left the hospital because he became angry at one of the nurses who, when called by him, did not immediately leave another patient that he was waiting upon; that thereafter plaintiff told affiant that he had quit Dr. Emery, and was going to treat his hand himself, and that he did not need a doctor any further; that in a subsequent conversation plaintiff approached him as to what he would testify if called as a witness in a case against defendant, and that upon answering that he would tell the truth

as to what happened, the plaintiff made to him the remark that he might "just as well have a piece of money out of it," if he would testify that he saw the doctor tear out the stitch and break the wound open. Affiant states further that he did not know when the case came to trial, having been in Montana at that time. Another affidavit was by Sister Methodius, a nurse in the hospital where plaintiff was treated by the defendant. She states in her affidavit that she was present at every treatment given plaintiff's injury by the defendant, and that the latter never removed any stitch from the wound nor tore the same open; that the dressing and bandages were thoroughly sterilized and medicated and the wound properly treated in every respect; that the wound was in good condition and healing properly when plaintiff left the hospital. Another affidavit was by one Birbeck, who states therein that he was a nurse at the hospital while plaintiff was there, and was present at every treatment of plaintiffs' injury given by the defendant, and witnessed the same; that under the defendant's directions he used medicated waters, sterilized gauze and sterilized bandages, and wrapped the wound in splints and moistened the same with medicated water several times every day; that defendant never removed from plaintiff's wrist or hand any threads or sutures while at the hospital, and that no cords, tendons, or nerves were severed or separated or torn apart, and no such occurrence took place as testified to by plaintiff; that some six months before the trial he removed to British Columbia where he had resided ever since, and was still residing. Affidavits were also filed touching other matters.

Defendant by his own affidavit states that, at the time of the trial and for about a month prior thereto, he did not know of the whereabouts of Schreckengost, and was unable to have him present to answer the unexpected evidence of plaintiff as to the alleged malpractice taking place at the hospital; that he did not know that Sister Methodius was present

at all of the treatments, inasmuch as there are twenty-five Sisters in this hospital, and that he did not recall whether it was this particular one that was present at all times, and did not know that she knew of all that had occurred at the hospital regarding respondent's treatment; that he was unaware of the whereabouts of Birbeck, the latter having removed to British Columbia some six months prior to the trial, and defendant being unable to locate him. It was made to appear that each of these witnesses upon a new trial would testify to matters set forth in their affidavits, and would be produced by the defendant for that purpose.

It is evident that if these three persons should testify as set forth in their respective affidavits, such evidence would be very material, and might reasonably be expected to change the result. The only question is as to whether defendant used due diligence in preparing for the trial; whether he might not, by the exercise of proper care and preparation, have forseen that these witnesses would be material, and have been able to obtain them by the making of proper exertion. We think, under the showing made, that there was a sufficient excuse for their not being produced. At least, ample reason is shown for the nonproduction of two of them.

The denial of the motion for a new trial was reversible error. The judgment of the honorable superior court is reversed, and the cause remanded for a new trial.

MOUNT, C. J., HADLEY, FULLERTON, and CROW, JJ., concur.

DUNBAR, J. (dissenting)—I am unable to reach the conclusion that the court abused its discretion in denying the motion for a new trial, and therefore dissent.