[No. 16156.   Department One.   April 12, 1921.]

GEORGE A. GRIST, *Respondent*, v. J. SCHOENBURG *et al., Appellants.*[1]

WITNESSES (72) — EXAMINATION — DISCRETION OF COURT.   Under Rem. Code, §§ 1225, 1229, authorizing the examination of an adverse party with the privilege of rebutting his testimony, the denial of the right to cross-examine a party on matter properly a part of a litigant's case would not constitute error.

NEW TRIAL (13½)—GROUNDS—MISCONDUCT OF JURORS IN GENERAL. Prejudice of jurors against some of a party's witnesses, coming to his knowledge in the course of the trial and before verdict, is not ground for new trial.

SAME (37)—NEWLY DISCOVERED EVIDENCE—MATERIALITY—CUMULATIVE EVIDENCE.   Under the rule that newly discovered evidence must be very material and such as might reasonably be expected to change

[1]Reported in 197 Pac. 35.

the result in order to justify the granting of a new trial, the refusal of a new trial was proper where the evidence produced in support of the motion was merely contradictory of a collateral fact.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered March 20, 1920, upon the verdict of a jury in favor of plaintiff, in an action on contract. Affirmed.

*Snively & Bounds,* for appellants.
*William B. Clark,* for respondent.

HOLCOMB, J.—The parties hereto, on August 19, 1919, made and entered into a written contract whereby appellants purchased of respondent his entire 1919 crop of Winter Nellis and Keifer pears, at an agreed purchase price for the entire crop of $2,700 f. o. b. Yakima, Washington. Seven hundred dollars was paid down on the purchase price of the entire crop at the time of the execution of the contract. Thereafter respondent picked, packed and delivered to appellants Winter Nellis and Keifer pears in accordance with the terms of the contract, claimed that he had delivered the entire 1919 crop of such pears, and was entitled to the remainder of the purchase price. Appellants, however, were disappointed as to the quantity of pears in the crop so purchased, and refused to pay respondent the balance of the contract price. Respondent accordingly brought suit for the balance of the contract price, less certain offsets for boxes to contain the pears, and paper to wrap them, which were furnished by appellants at agreed prices.

Appellants, in their answer, pleaded misrepresentation and fraud on the part of respondent. The substance of the misrepresentation and fraud, alleged by appellants in their affirmative defense, was that, at the time of the execution of the contract, and prior

thereto, namely, on or about August 15, 1919, respond-
ent represented to appellants that he had a growing
crop of Winter Nellis pears of not less than twelve
hundred boxes, first-class, merchantable pears, and a
growing crop of Keifer pears of not less than four
hundred boxes of first-class, merchantable pears; that
he was certain that his estimate was correct, from the
fact that, in 1918, this was the amount of the crop of
such pears grown upon the same acreage upon which
the 1919 crop was grown, and that he had a greater
amount of pears of each variety growing in the year
1919 than in 1918; that appellants relied upon such
representations and believed the same, and entered
upon the contract because thereof.

It is then alleged that the representations were
false, and known by respondent to be false at the time
they were made, or could have been known by him to
be false by ordinary diligence; that there was not the
quantity of pears represented by respondent, and that,
in truth and in fact, the quantity of Winter Nellis
pears grown and delivered was 593 boxes, and of Keifer
pears 120 boxes, and that at the time of the execution
of the contract, Winter Nellis pears were of the mar-
ket value of $1.40 per box, and Keifer pears $1.25 per
box. That therefore appellants had been damaged in
the sum of $1,138.20, and the consideration for the
contract had failed to that extent; and it was further
alleged that appellants had furnished respondent mer-
chandise under the contract of the value of $203.99,
and that, deducting the value of such merchandise and
the damage as alleged, there was owing by appellants
to respondent the sum of $657.81, which they therefore
tendered to respondent, and which he refused to ac-
cept, and which they tender in their answer.

The affirmative allegations of fraud and misrepre-
sentation, damage and failure of consideration, were

denied by the respondent in his reply. Upon these issues, upon a trial to the court and a jury, the jury returned a verdict for respondent in the sum of $1,830.06, and judgment was entered thereon.

On appeal two assignments of error are made:

First: denying appellants' right to cross-examine the respondent as to how many pears he grew in his orchard in the season of 1919, he having testified on direct examination that he had delivered all of them.

Second: In denying appellants' motion for a new trial.

I. On direct examination, respondent testified that he had both packed and delivered to appellants all of his pears of the Winter Nellis and Keifer varieties. On cross-examination, he was asked by counsel for appellants how much he estimated his pear crop would be, and how many Winter Nellis pears he had, and how many pickers he had. The court sustained objections to these questions on the ground that they were not proper cross-examination, being a part of appellants' case. Appellants cite no authorities upon this proposition.

We have statutes, Rem. Code, § 1225, providing:

"A party to an action or proceeding may be examined as a witness, at the instance of the adverse party, or of one of several adverse parties, and for that purpose may be compelled in the same manner and subject to the same rules of examination as any other witness to testify at the trial," etc.

And Rem. Code, § 1229, provides:

"The testimony of a party, upon examination at the trial," etc., "may be rebutted by adverse testimony."

We have held that these statutes are plain and explicit, and leave no room for interpretation. A party has the undoubted right to call the adverse party to

the stand and examine him, and to rebut his testimony by adverse testimony. *Thomas v. Fos,* 51 Wash. 250, 98 Pac. 663.

The questions propounded were relevant to the issues raised by appellants' affirmative defense, and the court in its discretion might have permitted the questions to be answered in cross-examination of the respondent, being the adverse party to the case, when attempted by appellants. Having such positive statutory right that cannot be denied, it is incumbent upon the trial court to accord the right by any orderly procedure which does not prejudice the party. But, ordinarily, the time for a party to examine his adversary is when his own case proper is reached; the time or stage of the trial when such examination may be had being, however, in the discretion of the trial court. 40 Cyc. 2473.

While it is true that the object of cross-examination is to weaken or disprove the case of one's adversary, and that the right of cross-examination of such adversary should not be abridged (40 Cyc. 2476-77), nevertheless, under the statute quoted, appellants had a complete remedy at their own command by putting the respondent upon the stand when they reached their case proper, and in examining or cross-examining him as the statute permits, not being bound by his testimony, and having a perfect right to contradict it. There was, therefore, no error in limiting the cross-examination as was done by the ruling of the trial court.

II. Appellants based their motion for a new trial upon (1) misconduct and bias of a juror, and (2) newly discovered evidence.

As to the bias and misconduct of the juror, it is claimed that he was biased and prejudiced against two of the principal witnesses of appellants, having had

trouble with them about two years before, and that he concealed the fact, and testified on his *voir dire* that he was not acquainted with the witnesses. The record of the *voir dire* examination of the jurors is not brought before us. The affidavit of appellant, however, to the effect that the knowledge of the bias and prejudice of the juror towards the witnesses did not come to their attention until after the jury had been selected and the case was proceeding, shows that the knowledge came to the attention of the appellants *before* verdict.

"It is the general rule that if a juror deceives or misleads a party by falsely testifying when being examined as to his competency, and as a result the juror, though in fact disqualified, is accepted, such conduct, when discovered, *after verdict,* will be ground for a new trial." 20 R. C. L. 242.

Counsel's own affidavit recites: "That after the jury had been empaneled and the case proceeded to trial defendant was advised of the facts," relating to the bias and prejudice of the juror towards his witnesses. He should then have spoken, and it came too late to object to the juror after they had permitted the case to proceed to verdict.

The newly discovered evidence claimed by appellants to justify the granting of a new trial is that of one Monroe, who, by affidavit in support of the motion for a new trial, deposed to facts contradicting facts testified to by respondent as to an offer claimed to have been made to respondent by a firm named Sgobal & Day.

At the trial, in testifying, respondent claimed that he had been made an offer of a price per box for his pears large enough to have made the amount due under the contract from appellants, equal to about the total price for the number of boxes delivered by him to appellants. He could not give the name of the employee

of Sgobal & Day, and said that he did not think it was
Monroe. In the affidavit of Monroe he claimed he was
the only representative at that time of Sgobal & Day,
and that he made no such offer at the time as the one
stated by respondent in his testimony, and would not
have made any such offer as was testified to by
respondent.

The record shows, however, that when the represen-
tative of Sgobal & Day was mentioned by respondent
in his testimony, appellants made an effort to find
the representative of that firm in Yakima, where the
trial was being held, and could not find him, but found
that he was in Tacoma at the time, but could not find
his location. They made no effort to secure a continu-
ance of the trial in order to secure the testimony of
Monroe. They insist, however, that they were excused
from making such demand because at that time they
did not know the facts to which Monroe would testify,
and would be obliged to set up the facts to which he
would testify in a showing for a continuance, and that
they could not find the address of Monroe, and could
not communicate with him, and therefore it was useless
to move for a continuance. The evidence of Monroe
was, of course, cumulative in its nature, although con-
tradictory, and we have adopted the rule in this state
that newly discovered evidence must be very material
and such as might reasonably be expected to change
the result. *Binns v. Emery,* 45 Wash. 215, 88 Pac. 133;
*Roe v. Snyder,* 100 Wash. 311, 170 Pac. 1027.

In *Roe v. Snyder, supra,* it was said that,

"  . . . It must not be forgotten in any case that
the motion for a new trial on this ground is addressed
to the discretion of the trial court."

And we quoted with approval the case of *Oberlander
v. Fixen & Co.,* 129 Cal. 690, 62 Pac. 254, to the effect

among other things, that, where the motion is denied, the fact that the newly discovered evidence is merely cumulative will generally be sufficient ground for affirmance, but where the motion is granted, the contrary will hold. In other words, it is for the trial judge to determine whether the evidence is of a character to affect the result of a new trial.

*Coldeen v. Reid,* 107 Wash. 508, 182 Pac. 599, cited by the appellants in support of their contention, will not sustain them. In that case the evidence of the prevailing party, as stated in the opinion, was in a manner self-contradictory, and could not all be true. There was serious room for doubt, and supporting evidence was discovered which could not, with reasonable diligence, be discovered before trial, and we were of the opinion that, under the showing made, together with the fact that the trial court had erroneously excluded evidence, it might reasonably be presumed that a new trial would result differently. That is not the case here.

The trial court considered the affidavits in support of the motion for a new trial, and in opposition thereto, and concluded that a new trial should not be granted on the ground of newly discovered evidence. The testimony of the parties was very positive but sharply conflicting as to representations by respondent to induce the contract. The contract was made upon a form provided by appellants and was dictated by the parties to the stenographer of appellants in the presence of each other. No stipulation of, or reference to, any specific quantity or number of boxes of pears was put in the contract. If representations were made to induce the contract, as averred by appellants, it is amazing that they were not mentioned in their written memorandum. The testimony of respondent as to another offer would be only a collateral fact. It might be con-

tradicted so as to affect the credibility of respondent as a witness. The jury might then disregard and reject his testimony as to that minor fact, and still be justified in finding in his favor upon all the principal facts relating to the contract and the misrepresentations. We are of the opinion that it cannot be reasonably presumed from these affidavits that the newly discovered evidence was so important and material that a different result would be reached by a new trial.

The judgment is affirmed.

PARKER, C. J., MACKINTOSH, and BRIDGES, JJ., concur.