PERRINE vs. HOTCHKISS.

53  77
4ap443

The books of a bank, not kept by either of the parties to an action, nor relating to transactions between them, but referring solely to transactions between the defendant and the bank, are not competent evidence, between the parties, to show the amount of paper which has been discounted by the bank for the defendant, and the number of notes so discounted and renewed. And a statement made up from such books is equally incompetent.

The opinion of a witness as to the value of services rendered by the plaintiff to the defendant, (1) In procuring the defendant's paper to be discounted, and procuring loans for him in that way ; (2) In indorsing the defendant's paper, and thus aiding him with his credit, either by way of sale or loan of credit; (3) For time, travel and expenses in going to different banks and places to get the defendant's paper discounted and renewed, is inadmissible.

The compensation for brokage in soliciting, driving or procuring the loan or forbearance of money being fixed by statute, it cannot be enlarged or changed, in a particular case, by any testimony.

In the case of indorsements of commercial paper, by accommodation indorsers, the law does not presume an agreement between the maker and indorser that the latter shall be compensated for the favor of his indorsement. If compensation is claimed, the indorser must show that there was a special agreement that he should be compensated for such use of his credit.

The law allows a party who becomes surety for another, by way of indorsement or otherwise, to agree upon a certain price for the use of his credit. But unless there is some specific contract fixing the price to be paid, a surety cannot recover for the use of his credit by the principal.

Opinions of witnesses are not competent to fix a price for the use of credit, where no price was agreed upon; for the reason that credit cannot be said to have any regular and current market value.

If time, travel and expense are expended or incurred by an indorser, for his principal, independently of the brokage, the indorser may recover therefor, upon the general promise to pay, whatever sum he can prove the services to be worth, not to the defendant in the particular circumstances in which he was placed, but according to the general price and value of such services.

This may be proved by the opinions of witnesses who are qualified to judge of the value of the services.

APPEAL by the defendant from a judgment entered upon the report of a referee.

The plaintiff and defendant, after about the 1st of September, 1858, down to and into the year 1862, had mutual,

Perrine *v.* Hotchkiss.

open and current accounts with each other.  The plaintiff, during the time, kept quite an extensive jewelry establishment in the village of Lyons, and also carried on a large farm near said village.  The defendant was and is a dealer in peppermint oil and produce.  About the time these mutual accounts commenced, the plaintiff became the defendant's indorser, not only to raise money for the defendant's but for the plaintiff's business as well; which was accomplished by the defendant loaning to the plaintiff a part of the avails of these discounts, from time to time, as the plaintiff needed.  Also, other moneys loaned to the plaintiff.  These mutual accounts and accommodations between the parties continued down to late in the fall or forepart of the winter of 1860–1, when peppermint oil fell in price, and the defendant had his oil on hand, could not sell it or pay his paper, and suits were brought on some of this accommodation paper.  A misunderstanding between the parties seems to have arisen, in relation to the terms of a contract for peppermint oil, made in 1860, and as to a large claim against the defendant which the plaintiff finally made for indorsing for him.  To close up and settle the matters between these parties, this action was brought about the 23d day of July, 1868, and was referred to a referee.  Several questions arose upon the rulings of the referee in relation to receiving evidence for the plaintiff, under and against the objections interposed by the defendant, to which rulings exceptions were taken, as well as to the findings and conclusions of the referee in his report.

The referee found, as a conclusion of law, from the facts proved, on the accounting before him, that the defendant should be charged with the sum of $10,932.26, and that he should be credited with offsets to the amount of $5046.81.  And the referee reported that, at the date of his report, there was due from the defendant to the

Perrine *v.* Hotchkiss.

plaintiff the sum of $5885.45, for which amount he ordered judgment for the plaintiff, with costs.

*C. Mason,* for the appellant.

I. The bank statement which was received and read in evidence, against the defendant's objection, is a species of wholesale testimony which would do nothing towards establishing how much service the plaintiff performed for the defendant, or give any correct data by which one could form a correct opinion of its value. (16 *Wend.* 586. 7 *Bosw.* 195. 17 *N. Y.* 134. 15 *id.* 487, 488. 6 *Duer,* 442.) The cross-examination of the witness Verplanck shows that the statement gave no correct information as to the amount of service performed by the plaintiff for the defendant, in the transactions with the Geneva bank.

II. The referee, while disclaiming the idea of allowing anything to the plaintiff, (in the absence of any contract to pay for indorsing,) except for services actually rendered, has allowed the plaintiff's witnesses, under our objections, to wholesale it all off together—services, risk, credit and annoyance—and then found for the plaintiff $1500—about the highest amount the witnesses put it at when all estimated and lumped off together. The witness Parshall testifies: " I can't give any particular items of services, &c. The services rendered were giving the defendant credit by indorsing his paper." Again he says, " the credit the plaintiff gave the defendant, the risk he ran, and the responsibility he assumed, enters into my estimate," &c. The finding of the referee, that the plaintiff's services in aiding the defendant to raise money were justly worth $1500, is simply robbing the defendant to put money into the pocket of the plaintiff, which he never thought of being entitled to while the services were being performed. He never even so much as charged the defendant a single day or hour for such services, or made any account of them whatever. Yet the plaintiff was

allowed to lump off the time and the value of the services in gross, by the referee, who received the evidence against the defendant's objection. The fact that the plaintiff never charged any services to the defendant, in the account he rendered to the defendant, goes to corroborate the defendant in his statements about having paid the plaintiff as the services were rendered; and of the plaintiff's having retained pay for services out of the avails of discounts; and of the defendant's having distilled oil for the plaintiff under price, and for nothing, to compensate him for these very services and accommodations. The defendant is able to specify and give items, day and date, amounting to from $300 to $500, which he has rendered to the plaintiff to pay him for his accommodations; besides allowing him to take his pay out of avails of discounts, for his services, at the time they were rendered; yet all this escapes the notice of the referee, while the plaintiff's evidence is received by him in gross—without items or date, or anything else giving it the color of reliability.

III. In the absence of any agreement to pay for indorsing, we insist the plaintiff is not legally entitled to any pay for indorsing accommodation paper; and all he is entitled to is for services actually rendered. The plaintiff does not even pretend that he made any arrangement with the defendant to be paid for indorsing for him, and not even for compensation for services, till a year or more after he commenced indorsing for the defendant.

IV. The defendant swears he paid the plaintiff $8.61, expenses to Geneva; that the plaintiff got a note of $1000 discounted at the Bank of Geneva, and took out $6 for expenses. Also, he says, "I always paid the plaintiff's expenses when he went anywhere for me. I knew when he or George went to get a discount they would take their expenses out of the avails." These facts, as sworn to by the defendant on the trial, were not and have not been

disputed by the plaintiff, yet the referee has not noticed or alluded to this undisputed evidence, in his report, or set off anything on account thereof, against the claim of the plaintiff for services, but has allowed to him for such services $1500, which the testimony shows (and much of it undisputed) have been fairly and fully paid.

V. From the whole evidence in the case, it is insisted that the findings of the referee are erroneous, and unsupported by the evidence, and against the law and the evidence, and that the judgment entered on the report of the referee should be reversed, and a new trial granted.

*J. H. Camp*, for the respondent.

I. The several exceptions taken upon the trial, by the appellant, are invalid. One of the material questions in this case arose upon the plaintiff's claim to compensation for services rendered for the defendant in procuring for him money, as stated in the first count of the plaintiff's complaint. This was met by the defendant's answer, and passed upon by the referee. The plaintiff claimed that, at the defendant's request, he rendered services in procuring for the defendant a large sum of money, in the nature of procuring indorsers to paper, getting paper discounted, &c.; and that the defendant agreed to pay him for such service, and all trouble the plaintiff was occasioned by reason of indorsing for the defendant. That the plaintiff procured for the defendant, at the Bank of Geneva, the sum of $50,000 to $60,000, and other sums at other banks, and of individuals, in all, over $100,000. All of the exceptions taken upon the trial are as to the proof offered in reference to establishing the kind and amount of service rendered, and its value. 1. Samuel H. Verplanck, the president and cashier of the Geneva bank, was called by the plaintiff, and asked to produce a written statement taken from the books of the Geneva bank, of

the notes and drafts indorsed by the plaintiff for the defendant, and upon which the plaintiff procured discounts for the defendant. To this the defendant objected, as irrelevant and immaterial, and that books of the bank could not show the services of the plaintiff to the defendant. No objection was taken that the evidence was incompetent or secondary. The plaintiff's claim was for services rendered in borrowing or raising money for the defendant. This schedule contained a statement of the amounts borrowed by the plaintiff upon paper indorsed by him, and the different paper upon which, and the time when, the same was borrowed. The facts to which the papers related were subsequently proved. The plaintiff indorsed all the notes mentioned in this schedule, and procured the same to be discounted for the defendant's benefit. The schedule was not offered to prove the indorsements of paper by the plaintiff, but as the memorandum from which the witness Verplanck spoke, and as containing a statement of the money borrowed by the plaintiff, for the defendant, at the Geneva bank, the borrowing of which the witness Verplanck had knowledge of, and testified to, as did also both the plaintiff and defendant. The evidence in this respect was certainly relevant and material. 2. It was proper to prove that discounts were obtained by the plaintiff for the defendant, as the plaintiff's claim was for this kind of service rendered.

II. The value of services may be proved by the opinions of witnesses who are acquainted with the value of such labor in that vicinity. 1. There was no objection taken to the competency of the witness Parshall; and therefore the witness is to be deemed competent to give the opinion asked for, if such an opinion is evidence. (*Curtis* v. *Gano*, 26 *N. Y.* 426. *Hoxie* v. *Allen*, 38 *id.* 175.) 2. The witness Parshall had testified that he was a banker, and had been since 1852; that he resided in Lyons; that he knew of

Perrine *v.* Hotchkiss.

the plaintiff's raising money for the defendant in the years 1859, 1860 and 1861; that he knew the plaintiff indorsed the defendant's paper and procured the same to be discounted at his (witness's) bank, and other banks. He was then asked: "Basing your answer upon your own knowledge of services rendered to the defendant by the plaintiff, in raising money, what, in your opinion, were these services worth, commencing in the fall of 1859, down to the forepart of the winter of 1862?" The amount and character of services rendered the defendant.by the plaintiff had already been proved. The substance of the question then asked, was, what were those services that you know the plaintiff rendered to the defendant, during the time in question, worth; and the answer, giving the witness's opinion of the value of the services he knew the plaintiff rendered to the defendant, (the witness being presumed competent to give such an opinion, 26 *N. Y.* 426,) was properly received. (*Lewis* v. *Trickey*, 20 *Barb.* 387.) In the case of *Lewis* v. *Trickey*, Judge Johnson, in rendering the opinion of the court, said: "The referee decided correctly in allowing the plaintiff to prove the value of his services by the opinions of witnesses who were acquainted with the value of labor in the vicinity." And no objection being taken to the competency of the witness, he is deemed to be acquainted with the value of the services in the vicinity. (*Curtis* v. *Gano*, 26 *N. Y.* 426.) 3. It was not necessary that the witness should first state the services that he knew the plaintiff to have rendered to the defendant, before giving an opinion. (*Curtis* v. *Gano*, 26 *N. Y.* 426.)

III. The witness Hiram G. Hotchkiss was asked: "Did you ever hear of any one being paid for indorsing?" The objection to this question was properly sustained. The referee had ruled that the defendant could not recover for indorsing, simply. If the plaintiff could recover at all for indorsing, labor, &c., it was under and by virtue of a

contract. And, therefore, what the witness had heard in relation to others being paid for indorsing, was immaterial.

IV. The referee correctly found that the defendant was indebted to the plaintiff in the sum of $1500, for labor and services rendered by the plaintiff in borrowing money for the defendant. 1. The plaintiff had been, during the early part of the year 1859, indorsing for the defendant as an accommodation indorser; the defendant kept asking the favor more frequently, and the plaintiff finally said to him he could not indorse any more for nothing. The defendant urged the plaintiff to indorse, and said he would pay him for everything he did for him. The defendant says: " I think it very likely I told the plaintiff I would pay him for his time and trouble for indorsing for me." The defendant became embarrassed, and could not raise money. The plaintiff again told him he was indorsing more paper than the defendant spoke of; that if he indorsed more, he must be well paid. The defendant promised to pay the plaintiff well for his time and trouble, if he would keep along. 2. The services were worth the amount allowed by the referee. They consisted in raising for the defendant money, which he so greatly needed; not in riding over to Geneva and Palmyra, or walking to and from the banks in Lyons. The value of the services rendered consisted mainly in the fact that the plaintiff could and did raise the money for the defendant to the amount of over $100,000; and not that the plaintiff walked to a bank, and from it again. The influence and credit of the plaintiff, which enabled him to procure the money, is what made his services valuable. The extent of services rendered by the plaintiff to the defendant will appear from the fact that he borrowed for the defendant, at different banks, and from individuals, $117,945.95. The value of the services will appear from the fact that the defendant needed a large amount of money to carry on his business. That the plaintiff raised the money for him upon his own credit.

Perrine *v.* Hotchkiss.

In some of the banks they would not have paper with the defendant's name upon it. And the plaintiff had to procure his own indorsers, to raise money for the defendant; and was obliged to become personally liable for this money, when the defendant's circumstances were most precarious. The plaintiff urged the defendant to get another indorser. "He said he couldn't; I must keep along." The plaintiff did keep along, upon the defendant promising to pay him well for his services, and all trouble he was put to. Finally suits were threatened, and the plaintiff begged the defendant to take care of paper. The defendant was powerless. He neglected the paper, and suits were brought. The plaintiff was sued upon these obligations sixteen different times; the sum of $22,846.43, being the aggregate amount claimed against the plaintiff in these sixteen suits. The Geneva bank alone had judgments against the plaintiff, on these matters, to the amount of $16,000. The amount allowed by the referee, viz., $1500, would not be one and a half per cent on the amount the plaintiff raised for the defendant. Mr. Parshall, a banker, residing in Lyons, says that the plaintiff's services in raising money at his bank were worth $400 to $600 a year; "that the time spent by the plaintiff was worth the amount I have stated. I don't take the plaintiff's impaired credit into account, at all." The plaintiff says, services were worth $800 to $1000 a year, for the two and a half years. The proof abundantly establishes that the defendant promised to pay the plaintiff for his services in the raising money for him, and for all trouble he was put to by reason of indorsing; that the plaintiff rendered these services for the defendant, and that same were well worth the sum of $1500. The judgment should be affirmed.

*By the Court,* JOHNSON, J. We are all of the opinion that the judgment must be reversed, for errors committed upon the trial, in receiving improper evidence

against the defendant's objections.   We think the statement from the bank-books of the Bank of Geneva, was improperly received in evidence.   This statement appears to have been received in evidence for the purpose of establishing the truth of the statements therein contained as to the amount of paper which had been discounted at that· bank for the defendant, and the number of notes so discounted and renewed.   The books themselves could not have been made evidence to prove these facts, and a statement made up from the books was equally incompetent. The books were not kept by either of the parties, and did not relate to transactions between them.   They related solely to transactions between the defendant and the bank, a third party; and we know of no rule of evidence which could render them competent evidence between these parties.   The testimony of the witness Parshall, expressing his opinion as to the value of the services rendered by the plaintiff, was also inadmissible as evidence, against the defendant's objection.   It was incompetent upon several grounds.   The services, as appears by the plaintiff's testimony, for which he claimed compensation, were of three different and distinct kinds, viz:  1. Procuring the defendant's paper to be discounted, and procuring loans for him in that way.   2. Indorsing the defendant's paper, and thus aiding him with his credit, either by way of sale or loan of credit.  3. Time, travel and expense in going to different banks and places to get the defendant's paper discounted and renewed.   The question propounded to this witness, called for his opinion of the value of all these sevices combined, and he was allowed to answer, against the objection of the defendant's counsel.   The value of these services under the first and second heads could not, we think, be legally proved by the opinion of any witness, however skilled or competent he might be in all matters of banking and finance.   The first relates to brokage, and the compensation for that service is fixed by statute.   (1 *R. S.*

Perrine *v.* Hotchkiss.

709, § 1.) By this statute it is provided that, "no person shall, directly or indirectly, take or receive more than fifty cents for a brokage, soliciting, driving or procuring the loan, or forbearance, of one hundred dollars for one year, and in that proportion for a greater or less sum, nor more than thirty-eight cents for making or renewing any bond, bill, note or other security given for such loan or forbearance," &c. It is clear enough that when the statute fixes the compensation, it cannot be enlarged or changed by any testimony. The second head relates to services by way of sale or loan of the credit of one to another. In the case of indorsements of commercial paper, by accomodation indorsers, the law does not presume an agreement between the maker and indorser, that the latter is to be compensated for the favor of his indorsement. If compensation is claimed, the indorser must show that there was a special agreement that he should be compensated for such use of his credit. The law allows a party who becomes surety for another, by way of indorsement or otherwise, to agree upon a certain price for the use of his credit. It has been repeatedly held that a person may loan or sell his credit to another, at a price agreed upon, the same as any other commodity; and that such contract is not usurious, when it is for that purpose only. This is quite different from brokage. But we are clearly of the opinion that a surety cannot recover for the use of his credit by the principal, unless there is some specific contract fixing the price to be paid. If there is only a general agreement that he shall be paid something, without fixing any specific sum, we do not see how any sum could be established. It is plain, we think, that opinions of witnesses would not be competent to fix a price, where no price was agreed upon, for the reason that credit cannot be said to have any regular and current market value. There is no standard to judge by in any given case, and opinions would necessarily be mere matters of fancy and conjecture.

Perrine *v.* Hotchkiss.

The credit of one person, as all know, may afford a much firmer and more valuable support than that of another, and be of far greater advantage in every way. Much would depend, in every case, upon the quality, and there is, and can be, no market price for different grades of credit when loaned or sold. It appears from the cross-examination of this witness, that he fixed the compensation named by him, of from $400 to $600 per year, for the credit given by indorsing the defendant's paper alone. As to the third item, time, travel and expense, the question whether the defendant could recover for that, would depend upon whether it was a service separate from the brokage, and was to be paid for as a separate service. It would not necessarily, or presumably, have any connection with the loan or sale of credit. They are quite different things, both in their nature and character. If this service was independent of the brokage, the defendant may recover for it upon the general promise to pay, whatever he can prove it to be worth, not to the defendant, in the particular circumstances in which he was placed, but according to the general price and value of such services. This may be proved by the opinions of witnesses who are qualified to judge of their value.

For the foregoing reasons, the judgment must be reversed, and a new trial ordered, with costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 5, 1870. *Mullin,* P. J., and *Johnson* and *Talcott,* Justices.]