(84 Misc. Rep. 415)

### GRANNIS v. TEMPLE.

(Supreme Court, Appellate Term, First Department.   March 5, 1914.)

1. USURY (§ 119*)—ACTION TO RECOVER—JURY QUESTION.

In a suit to recover money claimed by plaintiff to have been collected as an unlawful brokerage fee, and by defendant to have been collected as compensation for guaranteeing a loan, the question as to what the money was paid for *held* for the jury.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 343–357; Dec. Dig. § 119.*]

2. USURY (§ 28*)—WHAT CONSTITUTES.

Under General Business Law (Consol. Laws 1909, c. 20) §§ 380 and 381, respectively, providing that no person shall receive more than 50 cents per $100 as a brokerage for procuring a loan or more than 38 cents for making or renewing any bill, note, or other security, and that any excess may be recovered by suit, one who merely guarantees a note so as to induce a third person to make a loan can charge any amount he sees fit so long as the transaction is not a cover for usury or the collection of unlawful brokerage fees.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 72; Dec. Dig. § 28.*]

Appeal from City Court of New York, Trial Term.

Action by Edward J. Grannis against Charles R. Temple.   From a judgment for plaintiff, defendant appeals.   Reversed and remanded.

Argued February term, 1914, before SEABURY, GUY, and DE-LANY, JJ.

Hurd & Grim, of Brooklyn (William B. Hurd, of Brooklyn, of counsel), for appellant.

Jeremiah J. Coughlan, of Brooklyn, for respondent.

SEABURY, J.   The complaint alleges that on May 1, 1913, the defendant procured a loan of $6,000 for the plaintiff from the Stapleton National Bank, and that he took and received thereafter the sum of $2,000, $1,500 of which was paid May 1, 1913, and $500 thereof on June 11, 1913; that the plaintiff demanded the return of $1,970; and that the defendant has failed and refused to pay the same, and demands judgment for this amount, together with interest from the date that the money was paid.   The answer alleged as a defense that on or about the 1st day of May, 1913, the plaintiff applied to him to guarantee the payment of a note for $6,000 to be made by the plaintiff to the Stapleton National Bank, payable on demand, and agreed to pay the $2,000 if he would guarantee the payment of said note; that the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

defendant accepted said promise, and on May 1, 1913, the note for
$6,000 was made and delivered by the plaintiff to the said bank, to-
gether with an assignment of all moneys due or to become due on a
contract between the plaintiff and the city of New York for the con-
struction of a certain sewer between Bennett avenue and 181st street
on Broadway, and the defendant by an instrument in writing guaran-
teed the payment of said note and delivered the same to the bank; and
that said bank paid the plaintiff $6,000, and the plaintiff paid the de-
fendant the sum of $2,000 therefor, as agreed between them.

Upon the trial the defendant testified in support of the allegations
contained in this defense. The defendant also called the cashier and
vice president of the bank, both of whom testified that, at the counting
room of the bank at Stapleton on the day that the note was signed,
they told the plaintiff that the bank would not loan him $6,000 on his
note secured by an assignment of the sewer contract, unless the de-
fendant guaranteed the payment of the note, and that the note for
$6,000 was executed by the plaintiff, and in the presence of the plaintiff
the defendant drew up and signed a guaranty in writing and deliv-
ered it to the bank. The plaintiff contradicted the testimony of the
defendant and denied that there was any agreement between the de-
fendant and himself that the defendant should receive compensation
for guaranteeing the note, and claimed that the $2,000 paid to the de-
fendant was paid as brokerage only.

[1, 2] The plaintiff bases his right to recover, and the court below di-
rected a verdict in favor of the plaintiff, under sections 380 and 381
of the General Business Law. Section 380 provides as follows: ·

"Sec. 380. Brokerage on loans. · No person shall, directly or indirectly, take
or receive more than fifty cents for a brokerage, soliciting, driving or procur-
ing the loan or forbearance of one hundred dollars, and in that proportion for
a greater or less sum, except loans on real estate security; nor more than
thirty-eight cents for. making or renewing any bond, bill, note or other se-
curity given for such loan or forbearance, or for any counter bond, bill, note
or other security concerning the same."

Section 381 provides as follows: .

` "Sec. 381. Recovery of excess. Every person who shall pay, deliver or
deposit any money, property or thing in action, over and above the rate afore-
said, and his personal representatives may, within one year after such pay-
ment, delivery or deposit, sue for and recover the same of the person so
taking or receiving such money, property or thing in action, or of his per-
sonal representatives. In case such suit shall not be brought within the
time above prescribed, in good faith, or in case it shall be discontinued, or
willfully delayed, then the overseers of the poor of the city or town where the
offense was committed, may, within one year after such neglect, discontinu-
ance or delay, sue for and recover the money, property or thing in action, so
received, delivered or deposited, from the person receiving the same, or his
personal representatives, for the use of the poor of the county."

In our judgment a question of fact was presented which should
have been submitted to the jury for determination. If the jury found
as a fact that the claim of the defendant that the $2,000 paid by the
plaintiff was paid to the defendant to become a guarantor upon the
note was not true, but that it was a mere cover for brokerage or usury,
the verdict of the jury should have been for the plaintiff. If, how-

ever, the jury found the facts to be as testified to by the defendant and the witnesses whom he called, and was satisfied that the $2,000 was paid by the plaintiff to the defendant to induce the defendant to become a guarantor of the note, the verdict of the jury should have been for the defendant.

The statute provides that no person shall take more than the prescribed amount "for a brokerage, soliciting, driving or procuring the loan," or more than the prescribed rate "for making or renewing any bond, bill, note or other security given for such loan, or for any counter bond, bill, note or other security concerning the same."

The respondent contends that the defendant, upon his own version of the facts, took more than the rate prescribed by law for "security given for such loan," and that therefore the facts proved raised no issue for the jury to determine. The words "security given for such loan," and other like phrases employed in the statute, refer to security given by the borrower to the lender, and not to money given to a third person in payment for guaranteeing the debt of the debtor. Such an agreement is, under the law, merely a sale or loan by one of his credit to another, and as such as not within the statute against usury. Here, under the defendant's version of the transaction, the defendant was not connected with the loan in any legal sense, except that he guaranteed its repayment. He did not himself lend the money to the plaintiff, nor was he in any way interested with the bank in the making of the loan. All that he did, according to his testimony and that of his witnesses, was to guarantee that the plaintiff would repay the loan to the bank. This agreement of guaranty he was not obliged to enter into, and if he did enter into it he could lawfully receive whatever he could get for the sale of his credit. Of course, if such was not in fact the true character of the contract, and if the contract was not entered into in good faith but was intended as a cloak to hide a contract of brokerage or a usurious transaction, it will avail the defendant nothing. It was for the jury to determine whether the contract which the defendant made was one of guarantee or whether it was "usury in disguise." Where, however, the contract involves merely a bona fide sale of credit, the seller may sell his credit as he can his property for what he can get for it.

In More v. Howland, 4 Denio, 268, the court through Bronson, J., said:

"As the law now stands, a man has as good a right to sell his credit, as he has to sell his goods or his lands; and, if he deal fairly, he may take as large a price as he can get for either of them."

In Ketchum v. Barber, 4 Hill, 224, affirmed 7 Hill, 444, Nelson, C. J., after reviewing the English and American authorities, says:

"An extravagant charge for a guaranty, purely as such, is no more usury within the sense and meaning of the law than if exacted or given for any article of commerce."

In Dry Dock Bank v. American Life Insurance & Trust Co., 3 N. Y. 344, Judge Gardiner said:

"The credit of one person may be rendered available to another by gift, or sale, or in any other way."

146 N.Y.S.—16

The authorities upon the subject are fully reviewed in the cases cited and in the case of Leavitt v. De Launy, 4 N. Y. 363, and Elwell v. Chamberlin, 31 N. Y. 611.

In Perrine v. Hotchkiss, 58 Barb. 77, the court said:

"The law allows a party who becomes surety for another, by way of indorsement, or otherwise, to agree upon a certain price, for the use of his credit. It has been repeatedly held that a person may loan or sell his credit to another, at a price agreed upon, the same as any other commodity; and that such contract is not usurious, when it is for that purpose only. This is quite different from brokerage."

These cases make clear the rule of law applicable to the defense alleged, which required that the issue of fact in the case, whether the money was taken in payment of credit or as a brokerage and a cover for usury, should be submitted to the jury. In Ketchum v. Barber, supra, the court, after reviewing the authorities, said:

"In all these cases, however, if the transaction be a mere device to cover and conceal a loan at unlawful interest, it then comes within the statute. But whether there was such a device—a corrupt intention to evade the law—is a question of fact for the jury to determine upon a consideration of all the surrounding circumstances."

It follows that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.