444 P.2d 755

UNITED AMERICAN LIFE INSURANCE COMPANY, a corporation, and Zions First National Bank, National Association, a corporation, Plaintiffs and Respondents,

v.

Gary J. WILLEY and Jean M. Willey, his wife, Horizon Investment Corporation, a corporation, and Oak Hills Recreation Club, a corporation, et al., Defendants and Appellants.

No. 11086.

Supreme Court of Utah.

Sept. 4, 1968.

Carl T. Smith, Ogden, Nolan J. Olsen, Midvale, for appellant.

Roger J. McDonough, of Jones, Waldo, Holbrook & McDonough, Salt Lake City, for respondent.

ELLETT, Justice:

The respondents, as plaintiffs, brought suit on five notes and to foreclose various mortgages securing them. This appeal involves the counterclaim to one of the notes. The facts are not in dispute.

The stock of Horizon Investment Corporation is wholly owned by Mr. and Mrs. Willey, and these three are the appellants.

The Willeys organized Horizon for the purpose of constructing a country club. They put some of their own money into the venture and borrowed $270,000 from Zions First National Bank, hereafter called Zions. More money was needed, but Zions would not lend any more unless appellants would get a written commitment from some responsible financial organization whereby the organization would agree to purchase the note and mortgage upon demand from Zions. There was no requirement made as to who would give the commitment other than that it would be a responsible financial organization, and the Willeys were left to their own devices to secure it. They employed their own agents, one of whom had formerly worked for United American Life Insurance Company, a corporation, hereafter referred to as United American. An agreement was made whereby United American was to give the commitment to Zions for a loan in the amount of $450,000, a part of which would be used to pay off the $270,000 debt already due and owing to Zions. Out of the remainder, the appellants were to pay $9,000 to United American for giving the commitment. This would be two per cent of the face of the loan. This fee was known to Zions and was paid to United American by Zions out of the increased loan. There was a side agreement between appellants and United American whereby the appellants would deposit with United American $45,000 in cash to be returned to appellants with interest if United American did not have to buy the $450,000 note and mortgage. It further provided that if Zions did call upon United American to take the note and mortgage pursuant to the commitment, then United American was to keep the $45,000 deposited as its own unless appellants could refinance the matter in some way so as to avoid having United American buy the note and mortgage.[1] This side agreement was not known to Zions, and appellants sent their check to United American after they had received the money from the increased loan.

The note required payments of interest at eight per cent per annum to be made to Zions monthly from date (February 24, 1965) to and including December 15, 1965, and thereafter payments were to be made quarterly in the amount of $11,250 together with interest. The appellants paid nothing on the note, and after about one year Zions called upon United American to honor its commitment. The appellants did not other-

---

1. United American was apparently taking additional precautions against having to redeem from unpaid taxes, etc., in case it was required to foreclose. In fact, between December, 1965, and April, 1966, it loaned exactly $45,000 to the defendants so they could continue operating the club—which was subject to the mortgage given to secure the note for $450,000.

wise refinance the loan, and United American paid Zions and is now the holder and owner of the note and mortgage.

The only defense offered by appellants is that the loan is usurious. If it is, then appellants would not be chargeable with interest and could recover three times the amount paid as interest (none).

Both appellants and respondents moved for summary judgment. Respondents relied solely upon the testimony of Mr. Willey given by deposition. Appellants relied on the pleadings and a legal argument. The trial court denied appellants' motion for a summary judgment but granted that of the respondents. This appeal followed.

The note in question provided that upon default of payment of principal or interest, such unpaid amounts would draw interest at 10 per cent, which is the highest rate allowed by law in such cases. Sec. 15–1–2, U.C.A.1953.

■ In determining the question of usury, one must consider the agreement as it existed at its inception. If the promise is to pay interest at a rate which is greater than that allowed by law on the money actually loaned, the contract is usurious. However, if the borrower pursuant to his promise can discharge the loan by paying only the amount borrowed together with interest totaling not more than 10 per cent per year, the contract is not usurious. This is true even though the borrower promises to pay a greater rate of interest in case of default. See 91 C.J.S. Usury § 11 b.

■ Courts should be alert to examine carefully any suspicious transaction to determine whether the contract is in its entire aspect usurious. All of the surrounding circumstances existing at the time of the making of the agreement must be taken into consideration. If there is a promise to pay a contingent sum which would make the agreement usurious, it still would not be usurious if the contingency is one which is under the control of the borrower. On the other hand, if the borrower cannot control the contingency, then the contract would be usurious if the amount promised to be paid as interest is greater than that allowed by law. The contingency must be a part of the agreement with the lender in order to taint the transaction with usury. See 91 C.J.S. Usury § 11 c.

■ The entire transaction between the borrower and the lender may be encompassed in more than one agreement so long as all agreements form parts of the over-all agreement to lend the money. For instance, the promise to make a payment of a commission or bonus to the lender or to his agent would render the transaction usurious if the interest promised to be paid together with the bonus or commission amounts to more than the lawful rate of interest. See 91 C.J.S. Usury § 43 d.

■ An agreement otherwise proper is not rendered usurious by the payment of, or promise to pay, a commission by the borrower to his own agent even if such commission alone or in conjunction with the interest promised to the lender exceeds the lawful rate. See cases annotated in 52 A.L.R.2d 710.

The case of McCall v. Smith, 184 Wash. 615, 52 P.2d 338 (1935) is in point. Here Smith promised to pay his broker $75 if the broker could secure a loan of $1,000 from a lender. In addition to paying $75, Smith agreed to pay eight per cent interest to the lender, and the two sums exceeded the lawful rate of interest in the State of Washington. The defendant raised the defense of usury to the suit brought on the note and mortgage. The court at page 340 of 52 P.2d said:

> The answer to this question depends upon whether Quinn-Smith Company was acting as a broker or agent for appellants in securing the loan, or whether it acted either as a principal in loaning its own money to them, or else as agent for the lender, or for both the lender and the borrower. If it acted solely as the broker for appellants, it had the right to charge the commission, otherwise it did not.

In the instant case a simple note and mortgage bearing eight per cent interest was signed by the appellants. This is the only agreement made with Zions. There was no other arrangement made except that United American had given a commitment to buy the note and mortgage if demand to do so was made by Zions. In addition thereto, the borrowers (appellants herein) had it in their own control to withdraw the money deposited with United American together with interest thereon by the simple expedient of refinancing the loan in some manner so as to avoid the necessity for United American to honor its commitment.

■ United American was induced to make the commitment at the instance and request of the appellants' agents. That which United American did was to sell its credit for the use of the appellants, and this sale of credit is not to be confused with usury where it is not a part of the loan or a subterfuge to avoid usury. The annotator at 104 A.L.R. 245 says:

> However, in numerous cases the question has arisen whether the particular transaction amounted to a loan of money, or constituted merely a sale of credit, as regards the applicability of the usury statute. This is the question with which the present annotation is concerned. If a transaction amounts merely to a sale of credit, it is well settled that the usury law is inapplicable.

The old case of Grannis v. Temple, 84 Misc. 415, 146 N.Y.S. 239, 241 (1914), is in point. There defendant secured a loan for plaintiff in the amount of $6,000 and

charged a fee of $2,000 for doing it. The plaintiff sued to recover all but $30 of the sum paid to the defendant. The court stated the law to be:

> * * * Such an agreement is, under the law, merely a sale or loan by one of his credit to another, and as such as [sic] not within the statute against usury. Here, under the defendant's version of the transaction, the defendant was not connected with the loan in any legal sense, except that he guaranteed its repayment. He did not himself lend the money to the plaintiff, nor was he in any way interested with the bank in the making of the loan. All that he did, according to his testimony and that of his witnesses, was to guarantee that the plaintiff would repay the loan to the bank. This agreement of guaranty he was not obliged to enter into, and if he did enter into it he could lawfully receive whatever he could get for the sale of his credit. Of course, if such was not in fact the true character of the contract, and if the contract was not entered into in good faith but was intended as a cloak to hide a contract of brokerage or a usurious transaction, it will avail the defendant nothing. It was for the jury to determine whether the contract which the defendant made was one of guarantee or whether it was "usury in disguise." Where, however, the contract involves merely a bona fide sale of credit, the seller may sell his credit as he can his property for what he can get for it.

In More v. Howland, 4 Denio [264], 268, the court through Bronson, J., said:

> "As the law now stands, a man has as good a right to sell his credit, as he has to sell his goods or his lands; and, if he deal fairly, he may take as large a price as he can get for either of them."

In Ketchum° v. Barber, 4 Hill, 224, affirmed 7 Hill, 444, Nelson, C. J., after reviewing the English and American authorities, says:

> "An extravagant charge for a guaranty, purely as such, is no more usury within the sense and meaning of the law than if exacted or given for any article of commerce."

In Dry Dock Bank v. American Life Insurance & Trust Co., 3 N.Y. 344, Judge Gardiner said:

> "The credit of one person may be rendered available to another by gift, or sale, or in any other way."

The authorities upon the subject are fully reviewed in the cases cited and in the case of Leavitt v. De Launy, 4 N.Y. 363, and Elwell v. Chamberlin, 31 N.Y. 611.

In Perrine v. Hotchkiss, 58 Barb. 77, the court said:

> "The law allows a party who becomes surety for another, by way of indorsement, or otherwise, to agree upon a cer-

tain price, for the use of his credit. It has been repeatedly held that a person may loan or sell his credit to another, at a price agreed upon, the same as any other commodity; and that such contract is not usurious, when it is for that purpose only." * * *

The appellants here complain because this matter was determined at summary judgment upon facts given by Mr. Willey in his deposition. They rely upon the case of Christensen v. Financial Service Co., 14 Utah 2d 101, 104, 377 P.2d 1010, 1012, 2 A.L.R.3d 1144, wherein it was said:

Summary judgment can properly be granted under Rule 56(c) only if "the pleadings, depositions, and admission on file, together with the affidavits, if any," which are offered, show without dispute that the party is entitled to prevail. This condition is obviously not met if the allegations of the plaintiff's complaint stand in opposition to the averments of the affidavits so that there are controverted issues of fact, the determination of which is necessary to settle the rights of the parties. The trial judge correctly ruled that there were such issues of fact here. * * *

When that case was decided, it placed Utah all by itself among the states of the Nation, and the sole associate it had in that regard was the Third Federal Circuit. Frederick Hart & Co., Inc., v. Recordgraph Corporation, 169 F.2d 580; 6 Moore's Fed.

Pr. § 56.01[14]. Quite aside from having the distinction of causing Utah to be the only soldier in the Nation to be "in step," the case is now no authority for the claim made by appellants for the reason that Rule 56(e) was amended in 1965 by the addition of the following language:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The matter was properly decided on summary judgment, and the ruling of the trial court is, therefore, affirmed. Costs to respondents.

CALLISTER, and TUCKETT, JJ., concur.

HENRIOD, J., concurs in the result.

CROCKETT, Chief Justice (dissenting):

The facts are adequately stated in Justice Ellett's opinion except in one or two particulars where my view is somewhat different as will be apparent below. Also, I am in accord with two basic propositions of law he states relating to usury. The first is,

"* * * the promise to make a payment of a commission or bonus to the lender or to his agent would render the transaction usurious if the interest promised to be paid together with the bonus or commission amounts to more than the lawful rate of interest." The second is that "In determining the question of usury, one must consider the agreement as it existed at its inception. If the promise is to pay interest at a rate which is greater than that allowed by law *on the money actually loaned,*[1] the contract is usurious." Supplementing those statements, it is also true that in making that determination it is proper to look to all of the surrounding facts and circumstances to ascertain the true nature of the transaction. Without regard to the outward forms or the nomenclature used, as has been aptly stated, the court should "permit no scheme or device, however ingenious, to hide the face of usury."[2]

The critical question in this case is whether, under all of the circumstances disclosed by the record, reasonable minds could conclude that United American, in exacting the $45,000 so-called "deposit," was employing a scheme to augment its remuneration for the loan. The first argument advanced by United American is that the $45,000 "deposit" was in fact a payment for the use of its credit in standing by as security to support the Willeys' credit in obtaining a further loan from Zions First National Bank. The fact is that United American had already been paid a $9,000 commitment fee for standing by as credit on the aforesaid loan. And the further fact, which is of the utmost and controlling importance, is that under the agreement *the $45,000 "deposit" was not to become United American's property until and unless it was called upon to take over the loan and advance the money to Zions; and unless it did so the $45,000 was to be returned to the Willeys.* If this $45,000 had been a payment for United American extending its standby credit only, it had already performed that service, and it would have had the right to the $45,000. But inasmuch as if it did not take over the loan, the $45,000 was to be returned to the Willeys, and *the only way United American could get the $45,000 was to take over the loan and advance the money for the Willeys' benefit,* it seems quite inescapable that the $45,000 "deposit" cannot be regarded as payment for any other purpose than as a consideration for taking over the Zions loan and advancing the money for Willeys' benefit.

What I have just said relating to United American's argument that it was paid for

---

1. It should be noted that Willeys never had the use of the $45,000 "deposit." When United took over the loan from Zions, United had the "deposit" under its control. Due to this, and the $9,000

"commitment" fee United had received, the amount actually advanced by United for the Willeys was considerably less than $450,000.

2. 91 C.J.S. Usury, § 11 c.

lending its credit to Willeys, applies equally to its alternative argument that it received the $45,000 "deposit" as a fee for services rendered as an agent of the Willeys in being instrumental in obtaining the further loan from Zions.[3] Further refuting that argument, in addition to the fact that United American had already been paid a $9,000 "commitment fee" for standing by as credit on the new loan, is the fact that the Willeys had engaged their own agents, a Mr. Jesse Noble and a Mr. Robert Campbell, who were paid separate fees, $9,000 and $13,000 respectively, for their services in obtaining the backing required by Zions. Mr. Willey's deposition shows that he considered that these payments were for their efforts in obtaining United's agreement to take over the loan should Zions so demand.

Neither do I see how the plaintiff can gain any advantage from the argument that "if the borrower has it within his power to discharge the loan by paying the legal rate, the loan is not usurious." I observe in passing that, in view of the fact that under the terms of the agreement Zions First National had the unconditional prerogative of making demand upon United American to take

over the loan, it cannot realistically be said that the borrower had it within his control to obviate the usury exacted by its lender United American.[4] This is particularly true of the phase of the transaction and the agreement upon which United American is now suing. Therefore, the doctrine just quoted and argued for by the plaintiff could have no proper application under the facts of this case. However, even more important and what should be controlling here, is the fact that the doctrine that if a borrower becomes in default, usury may be charged, does not find support in either the statutory or the decisional law of this State. It should be pointed out that the statement from Corpus Juris Secundum cited in the main opinion is based on cases dealing with acceleration clauses and not with situations such as we have here. While there is admittedly some authority to the effect that after default, or after maturity, interest at higher than the lawful rate is not considered usurious, that text points out that there is authority to the contrary;[5] and that in any event "the courts will not, however, permit this principle [higher interest after default or maturity] to be used as a cloak for

---

3. As to any contention that the excess charge for making the loan was a service charge allowed by law, there is no indication that there is any specific provision for a service charge as our statute clearly requires. Sec. 15–1–2(a), U.C.A. 1953, provides: "That a loan or any renewal thereof * * * may *specifically provide* for a service charge, which

charge shall not exceed four percent of the principal sum of said loan; such service charge shall not be subject to any additional charge of interest."
4. That where the contingency is under the control of the creditor the contract is usurious, see 91 C.J.S. Usury § 31 a & b.
5. See 91 C.J.S. Usury § 31 e (2), p. 610, citing cases for both views.

usury * * *." [6] Whatever basis can be found for such a doctrine emanates from circumstances where the debtor in fact has the situation under his control, so that he can precipitate the transaction into usury, he is not justified in voluntarily doing so, and then claiming the advantage of sanctions against the lender.[7] But such a rule cannot justly be made to apply where in the inception of the transaction the lender is plainly in a position of exacting an unconscionable and excessive reward for lending money as appears in this case.

If there is reason and justice in protecting a person from usury, he certainly ought to have it when he needs it most: when he is in the embarrassment of being unable to meet his debt. To say that when he is in that position the dogs are unleashed upon him and he is deprived of protection is, in my judgment, a grievous injustice. Moreover, and more important than my opinion thereon, is the fact, as mentioned above, that I cannot see, nor has anyone pointed out, either in logic, or in justice, or in the statute or decisional law of this State, any justification for the artificial distinction that usury applies before and not after default. Our statute, Sec. 15–1–7, U.C.A. 1953, simply states that:

The taking, receiving, reserving, or *charging* of a rate of interest greater than is allowed by section 15–1–2, shall be deemed a forfeiture of the entire interest * * * [etc.].

It thus makes no distinction whatsoever as to before or after default, but plainly and unequivocally indicates that entering into a contract to charge excess interest results in the forfeiture provided for usury.

That this is the correct view is evident from expressions of our own court. In the case of Mathis, et al. v. Holland Furnace Co.,[8] in considering this problem this court stated:

Only by an attempt to collect charges under the contract which would constitute usury could we find the required intent to justify a finding of usury.

If, * * * it should appear the seller intended to collect a sum as interest greater than allowed by law, because of optional provisions, we would hold the contract usurious.

The same concept is reflected in the more recent case of National American Life Ins. Co. v. Bayou Country Club,

6. Ibid.; additional recent cases which hold that contracts containing acceleration clauses which exact excess interest are usurious are: Home Credit Corp. v. Brown (Fla.), 148 So.2d 257; First Mortgage Corp. v. Stellmon (Fla.App.). 170 So.2d 302.

7. See statement in Small v. Ellis, 90 Ariz. 194, 367 P.2d 234, 238.

8. 109 Utah 449, 166 P.2d 518.

Inc.[9] In a fact situation similar to the instant case this court treated excessive charges for a loan, by whatever name called, as usury and stated:

> * * * The test to be applied in any case is whether there was an expressed intention to charge a rate of interest greater than is allowed by law, and this is determined as of the date of *its inception*. * * *

. It is submitted that an examination of the texts and the cases will reveal that what courts do is to look at the individual situation to see whether the lender is attempting to collect for loaning his money an amount exceeding the lawful rate of interest, and if he is doing so, by whatever name or guise it may appear, it is deemed usury.

If the law as above discussed is applied to the facts disclosed in this record on summary judgment, it appears to me that there is a basis upon which reasonable minds could conclude that United American advanced money for the benefit of the Willeys for which it contracted to make a charge the true effect of which was to exact in excess of the lawful rate of interest. Therefore, the summary judgment as to United American was improperly granted and the case should be remanded for trial.

(All emphasis added.)

9. 16 Utah 2d 417, 403 P.2d 26.