516 P.2d 348

Carl B. CLEGG, dba Clegg Realty Company, et al., Plaintiffs and Appellants,

v.

Jeannie G. LEE, Defendant and Respondent.

No. 13256.

Supreme Court of Utah.

Nov. 30, 1973.

---

Glen J. Ellis of Maxfield, Gammon, Ellis & McGuire, Provo, for plaintiffs and appellants.

Robert M. Anderson and Robert D. Merrill, of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendant and respondent.

CALLISTER, Chief Justice:

Plaintiffs, Mr. and Mrs. Blake, initiated this action, seeking specific performance of an earnest money receipt and offer to purchase, executed by Mrs. Blake as vendee and defendant, Mrs. Lee, as vendor, on July 16, 1971. Plaintiff Clegg seeks judgment against Lee for a real estate commission. Defendant, Lee, filed a counterclaim alleging that Mr. Blake had executed a uniform real estate contract to purchase the premises on May 12, 1972; that after service of a notice of default, he had failed to perform thereunder; and that in accordance with the provisions of the con-

tract Lee had elected to be released from all obligations to convey the property, and had declared Blake's payments forfeited as liquidated damages. Lee sought to have the title to the property quieted in her.

Lee, based upon the pleadings and depositions, filed a motion for summary judgment. The trial court entered judgment, forfeiting Blake's payments to Lee as liquidated damages, quieting title to the property in Lee and dismissing plaintiffs' complaint with prejudice.

Mrs. Lee was the owner of a home in American Fork, Utah; she had listed the property for sale with Clegg Realty Company. The Blakes were residents of California. Shortly prior to the expiration of Mrs. Lee's listing agreement with the realtor, an agent brought Mrs. Blake to see the premises. Mrs. Blake paid a $100 deposit and executed the earnest money receipt and offer to purchase on July 14, 1971. Mrs. Lee accepted the offer on July 16, 1971. Under the terms of this agreement, the purchase price was $26,800. The buyer was to pay $1,900 in ten days, and approximately $6,700 on delivery of the deed or final contract on or before September 13, 1971. The buyer was to assume the existing mortgage on or before the time of closing on September 13, 1971. Approximately on the 20th of July, Mr. Blake arrived in Utah and went to view the premises with his wife. The Blakes informed Mrs. Lee that it would be impossible to move from California and assume possession of the house by September. The Blakes thereafter never fulfilled any of the conditions of performance under the earnest money receipt.

The Blakes did express an interest in purchasing the property in the future, approximately the following year in July of 1972. The Blakes suggested that they pay to Mrs. Lee her house payments of $159 per month during which time they could negotiate a purchase agreement. At Blakes' urgence and in their presence, Mrs. Lee contacted an attorney, who suggested an option agreement. Mr. Blake was of the opinion that no real estate commission was due, since they were not proceeding to purchase under the earnest money receipt, and he suggested that the option agreement reflect this matter. The Blakes returned to California. The realtor, Clegg, contacted both the Blakes and Mrs. Lee, who informed him that the Blakes did not intend to perform. Relator, Clegg, retained the deposit of $100 paid by Mrs. Blake.

Mrs. Lee's attorney drafted an option agreement, which he mailed to Mr. Blake on August 18, 1971. Thereafter, Blake neither executed the option agreement nor did he suggest any changes. Mrs. Lee's attorney sent a series of six letters, including a second copy of the option agreement, explaining that the matter must be reduced to writing and that Mrs. Lee must receive a lump sum in cash. The attorney stated

that if the option were not executed and the payments made as provided therein, Mrs. Lee would assume Blake desired to abandon the option, and she would sell to someone else. Mr. Blake continued to send the $159 per month payment, but he did not execute the option or fulfill an oral promise to send a $1,000 payment before January 25, 1972. On February 4, 1972, Mrs. Lee's attorney notified Mr. Blake that his failure to execute the option agreement and to make the promised payments had terminated his option rights. Mr. Blake responded by letter, admitting he had been unable to perform and requesting a meeting.

On March 24, 1972, in a letter to Mrs. Lee, Mr. Blake acknowledged that he had contacted Mrs. Lee in August, 1971, regarding an option to purchase her home. Thereafter, he made several monthly payments of $159, while attempting to work out the terms and provisions of the option. Blake admitted that he received copies of the option agreement but he failed to execute the same. Mr. Blake stated that in February, 1972, he had a discussion regarding the terms of the option and proposed purchase and he failed to pay the sums to fulfill the commitment and was thereafter advised the option was terminated. Mr. Blake specifically declared that he had no rights in or to the option or to purchase the property, and that he released Mrs. Lee from all further liability in connection with the payments made and the negotiations which had taken place between the parties. Janna Blake also admitted in a letter to Mrs. Lee that she had executed an earnest money receipt and offer to purchase, that she had been unable to make the payments within the time period contemplated and to complete the transaction as specified in the agreement. Janna stated that Mrs. Lee had notified her the contract was terminated for failure to make the payments, and Janna acknowledged that the contract was cancelled in July, 1971.

Blakes persisted in their desire to purchase the property, and Mr. Blake executed a uniform real estate contract on May 12, 1972. According to the terms of this agreement the purchase price was $27,300. (The upward adjustment was made to reflect the costs of improvements made by Mrs. Lee.) The contract required a $1,000 payment on execution; a $1,000 payment on May 25, together with a loan commitment; a payment of $2,000 on June 15; and the remainder less the loan commitment on July 1, 1972. Any difference between the loan commitment and the actual loan was to be paid by August 31, 1972, so that the purchase price would be paid in full.

Mr. Blake was notified by letter on June 22 and June 28 that Mrs. Lee had not received the $2,000 payment due on June 15, 1972, that Mr. Blake had a five-day grace

period which had expired, and that Mrs. Lee intended to exercise her remedies under that contract. Mr. Blake paid the $2,000; he was notified by mail that he owed $3,300 under the terms of the agreement and that he was to make payment. On July 19, 1972, Mr. Blake was sent a notice of default, in that he had failed to pay the $3,300 on July 1, or five days thereafter. Mr. Blake was informed that if he did not remedy the default within five days after receiving the notice, Mrs. Lee was exercising her right to declare a forfeiture and consider herself released. On September 12, 1972, Mrs. Lee by letter notified Mr. Blake that he had failed to pay the $3,300 after notice of default, and that she was declaring his payments forfeited, his right to a conveyance terminated, as provided in the contract.

Plaintiffs' complaint was filed on June 30, 1972, although it is confusing, evidently their theory was that the earnest money receipt had been subsequently modified by an oral agreement, which provided the Blakes would make the house payments of the vendor in the sum of $159 per month and the vendor would occupy the premises for one year. Blakes claimed that they had paid thereunder seven house payments totaling $1,113 and a $14 water assessment. They claimed that they were subsequently informed that since they had not fulfilled the obligations in the earnest money receipt, the contract was unenforceable and the sums they had paid were forfeited. Blakes alleged that they were induced to enter into a real estate contract on May 12, 1972. Blakes urged that the earnest money receipt as modified by the oral agreement was a valid and enforceable contract, and they pleaded for specific performance thereof. Plaintiff Clegg sought his real estate commission based on the viability of the earnest money receipt. Blakes sought judgment for the seven payments of $159 or that it be applied on the purchase money under the earnest money receipt. Blakes further sought to have the uniform real estate contract declared null and void.

Plaintiffs, the Blakes, in their second cause of action alleged that through false and fraudulent representations they were induced to enter the highly disadvantageous uniform real estate contract. They sought punitive damages for $10,000. In the third cause of action, plaintiff Clegg alleged that defendant intentionally delayed the preparation of a contract to support the earnest money receipt for the purpose and intent to defaud him of his real estate commission. Clegg sought judgment for 6% of the purchase price of $26,800.

In response to defendant's counterclaim, Mr. Blake asserted as a defense that he had entered into the uniform real estate contract under duress and as a result of false representations. Mr. Blake denied that he was in default and claimed that he

had paid defendant $5,427, which should be credited to his account.

■ In her motion for summary judgment, defendant urged that the earnest money receipt of July, 1971, and the alleged subsequent oral modifications were merged into the written uniform real estate contract executed by Mr. Blake on May 12, 1972. This latter agreement provided that the parties expressly understood and agreed that there were no representations, covenants, or agreements with reference to the property except for those specifically set forth or attached to the agreement. In addition, defendant cited the exhibits and deposition of Mr. Blake, which indicated that there was no fraud or duress practiced on him to induce him to execute the contract. Mr. Blake had, in fact, by letter, specifically released defendant from any further liability in connection with any payment made or with negotiations which had taken place. Furthermore, Janna Blake, alone, executed the earnest money receipt. The depositions and exhibits clearly evidenced the fact that Blakes, either together or individually, were never ready, willing, and able purchasers; therefore, Clegg was not entitled to his real estate commission. Defendant urged that the plaintiffs' second and third causes of action should be dismissed for their failure to plead fraud with particularity as required under Rule 9(b), U.R.C.P. The depositions of the Blakes clearly indicated that there was no factual basis to support the allegations of fraud. The documentary evidence presented by defendant fully supported her counterclaim. Plaintiffs offered no counteraffidavits in opposition to the motion for summary judgment, but relied upon their allegations of fraudulent misrepresentations in their complaint.

On appeal, plaintiffs urge the trial court erred in granting summary judgment on the ground that there were numerous issues of fact in conflict. Plaintiffs cite the allegations in their pleadings to substantiate their claim.

Rule 56(e), U.R.C.P., provides:

. . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

■ A matter may be determined on summary judgment upon facts given in a party's deposition. Under Rule 56(e), U. R.C.P., an adverse party may not rely on mere allegations or denials in his pleadings, but he must set forth the facts show-

ing that there is a genuine issue as to a material fact for trial.[1]

■ The statements in Mr. Blake's deposition refuted his allegations of fraud and misrepresentation; therefore, plaintiffs could not rely on their pleadings to avoid summary judgment. The other facts cited by plaintiffs in their memorandum in opposition to summary judgment did not create an issue requiring trial. They merely repeated the sequence of events prior to the execution of the uniform real estate contract, which did not create an issue which must be resolved by a trial to determine the legal rights of the parties.[2]

■ The Blakes urge that the trial court erred in granting Mrs. Lee's counterclaim for forfeiture of all the payments made under the terms of the uniform real estate contract as liquidated damages. Blakes contend that there was no evidence to establish that Mrs. Lee had sustained *any* damages; and, therefore, the forfeiture provision as liquidated damages in the contract was per se unconscionable and a penalty without proof that the payments retained bore a substantial relationship to damages sustained.

Plaintiffs did not raise this issue in their pleadings, although the question of forfeiture was set forth in defendant's counterclaim. Plaintiffs offered no affidavits in opposition to summary judgment setting forth facts supporting their claim. This court will not consider an issue raised for the first time on appeal. Orderly procedure requires that a party must present his entire case and his theory or theories to the trial court, and he cannot thereafter urge a different theory in an attempt to prolong litigation.[3]

■ Plaintiffs' contention that a vendor must prove his actual damages before he is permitted to retain under a forfeiture provision of a real estate contract the payments of a defaulting vendee is not the law in this jurisdiction.[4]

■ Finally, plaintiffs contend that defendant is not entitled to an award of attorney's fees, since defendant sought to avoid and not to enforce the contract.

Plaintiffs' contention is without merit, since paragraph 21 of the uniform real estate contract specifically provided for attorney's fee for the nondefaulting party, while pursuing any remedy provided under

1. United American Life Insurance Company v. Willey, 21 Utah 2d 279, 285, 444 P.2d 755 (1968).

2. F.M.A. Financial Corporation v. Build, Inc., 17 Utah 2d 80, 85, 404 P.2d 670 (1965).

3. Simpson v. General Motors Corp., 24 Utah 2d 301, 303, 470 P.2d 399 (1970).

4. Jensen v. Nielsen, 26 Utah 2d 96, 485 P.2d 673 (1971).

 

the contract or by the statutes of the state of Utah.

The judgment of the trial court is affirmed. Costs are awarded to defendant.

HENRIOD, ELLETT and TUCKETT, JJ., concur.

CROCKETT, Justice (concurring and dissenting):

I agree with the affirmance of the ruling of the trial court that there is no triable issue as to fraud in the inducement of the contract. However, I do not agree that the trial court was justified in granting summary judgment as to other issues. I avoid burdening this lone dissent and the printed page with any extensive recitation of plaintiffs' claims as to the facts upon which they sought to enforce their right to purchase the property. But, as will appear from the main opinion, these points are salient: that there were extended negotiations between the parties concerning the purchase of the home of Mrs. Lee; that quite different from the usual case of the forfeiture of a real estate purchase contract, she remained in the possession of her home, and meanwhile accepted payments aggregating over $5,000; that in seeking forfeiture she relies on notices of only five days, and reciting forfeiture to be an already accomplished fact; and served after the commencement of this action.

This is a case in equity. It may well be that upon a trial of the issues, the trier of facts would find the defendant's actions to be unreasonable and arbitrary, and refuse to enforce the forfeiture. See Wingets v. Bitters, 28 Utah 2d 231, 500 P.2d 1007. Consequently, I think there are disputed issues of fact which should have been tried.